IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BANCPASS, INC., | § | |
|   Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:14-CV-01062-SS |
| | § | |
| HIGHWAY TOLL ADMINISTRATION, | § | |
|   Defendant. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 12(B)(6) MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

I.      Preliminary Statement ............................................................................ 1

II.     Factual Allegations from Plaintiff's Petition ............................................. 3

III.    Arguments and Authorities ...................................................................... 8

    A.      Rule 12(b)(6) Standard ................................................................ 8

    B.      Plaintiff has stated a claim for declaratory relief.......................... 9

        1.      Plaintiff seeks a declaration that HTA's proposed agreement is a per se violation of section one of the Sherman Act. ............................... 10

        2.      BancPass has standing to seek a declaratory judgment regarding a potential antitrust violation. ................................................................ 12

        3.      BancPass has standing to seek a declaratory judgment as to customer's freedom to lawfully choose BancPass's service over HTA's. ................................................................................................. 14

    C.      BancPass has stated claims for tortious interference and tortious interference with prospective relations ....................................... 15

    D.      Should the court grant Defendant's motion in any part, Plaintiff requests leave to amend ........................................................... 19

IV.     Conclusion ............................................................................................ 20

V.      Prayer ................................................................................................... 20

    Certificate of Service ............................................................................ 22

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BANCPASS, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:14-CV-01062-SS |
| | § | |
| HIGHWAY TOLL ADMINISTRATION, | § | |
|     Defendant. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Plaintiff BancPass, Inc. ("BancPass" or "Plaintiff") files this response to Defendant Highway Toll Administration's ("HTA" or "Defendant") Motion to Dismiss, and in support thereof would show the Court the following:

## I.   PRELIMINARY STATEMENT

This case is about a dominant market player taking repeated wrongful actions designed to put a smaller competitor out of business.  It is also about consumers' choice.  When a customer rents a car, he may elect to fill the gas tank back up at the local gas station for $2.49 a gallon, or he can choose the convenience of letting the rental car company refuel the car at $9.89 per gallon.  But, at least according to HTA, when it comes to toll-road charges, that same rental car consumer has no such right. Rental car companies typically charge customers $4 per day plus the actual costs of tolls incurred for the option to have HTA and the rental car company pay the tolls consumers incur while driving a rental car, though the actual cost of enabling such toll payments is closer to 20 cents per toll.

BancPass offers an alternative: an easily accessible technology, that allows customers to simply download an app called "PToll™" ("PToll™") on their smartphones,

photograph their rental car license plate, activate the plate with BancPass, and pay only the actual tolls, plus a 20 cents per transaction service charge.   Thus, BancPass represents the ability to "buy gas elsewhere," and this much less costly threat explains precisely why HTA (and the rental car companies) are determined to put BancPass out of business and why they so wish to terminate this litigation quickly.

Apparently not content with its 80% market share and seemingly intent on preventing any competition from the BancPass app, HTA has made a multi-front assault on BancPass.   Since BancPass's product is a smartphone app, it contracts with Google and Apple to offer the PToll™ app through the Google Play and iTunes stores.   To cut BancPass off at its source, HTA made demands to both Google and Apple that they remove PToll™ from their app stores.   In order to provide toll processing services to consumers, BancPass also needs to contract with tolling authorities, such as the Texas Department of Transportation ("TXDOT"), or Central Texas Regional Mobility Authority ("CTRMA").   So, HTA's next assault on BancPass has been to contact tolling authorities seeking to prevent them from doing business with BancPass and threatening legal action against the tolling authorities if they don't comply.   Finally, HTA made a direct assault, threatening legal action against BancPass unless BancPass makes an agreement to cede the rental car portion of the toll processing market to HTA.

Despite HTA's repeated attempts to characterize the filing of this case as merely an effort to "create publicity" or "gain attention," in truth, this lawsuit was filed in response to HTA's repeated interference with BancPass's contractual relationships, and in an effort to establish BancPass's right to compete.   BancPass has asserted three causes of action: (1) tortious interference with existing contracts and prospective

business relations with Apple, Google, and tolling authorities; (2) for declaratory relief that rental car consumers have the right to choose PToll™ as an alternative to HTA's service; and (3) for declaratory relief that if BancPass were to agree to HTA's demand to cede the rental car toll processing market to it, such an agreement would be a per se violation of section one of the Sherman Act.  The petition pleads facts plausibly stating each of these claims, and Defendant's motion should, therefore, be denied.

## II.   FACTUAL ALLEGATIONS FROM PLAINTIFF'S PETITION

Plaintiff BancPass is an innovator in providing toll road users access to electronic payment technologies.   BancPass provides toll-paying solutions for both tolling authorities and directly to consumers.   In April 2014, BancPass rolled out "PToll™," BancPass's smartphone application.  PToll™ provides toll road users with a simple and convenient method to pay tolls using the camera on their smart phones.  *See* Plaintiff's Original Petition, ¶ 10.

A consumer can download the PToll™ application on his smartphone, take a photo of the license plate of the car he is driving, assign a method of payment, and drive on participating toll roads as though he had a "tag" or "pass" issued by the local tolling authority.  This system provides a quick and seamless method for a user to pay tolls, no matter what car they are driving, and no matter where they are from.  While PToll™ is well suited for use by rental car consumers, drivers can use PToll™ with their own vehicles as well.  *See* Plaintiff's Original Petition, ¶ 11.

PToll™ is available on Apple iTunes® and Google Play®, and can be downloaded for free.   PToll™ users are charged a $.20 to $.25 per transaction fee for using the system, which amounts to a fraction of BancPass's competitors' charges.  *See* Plaintiff's Original Petition, ¶ 12.

Defendant HTA contracts with rental car companies to provide toll processing services for rental cars.  HTA claims to be the largest provider of toll services for the rental car industry.  On its website, HTA declares it handles the "tolling interests of more than 1.7 million vehicles" on behalf of major rental car companies, including Alamo, Avis, Budget, Enterprise, National and Payless.  HTA's website further proclaims that it "is proud to say we have more than 80% of the market share by transaction volume."  *See* Plaintiff's Original Petition, ¶ 13.

HTA provides toll processing services to rental car companies in two ways.  The first is through radio-frequency identification ("RFID") toll tags that are charged to HTA's account when a rental car driver uses the tag to pay a toll.  The second method is by HTA registering rental car license plate numbers with toll agencies.  When a registered rental car is driven through a toll lane, the license plate is captured and the toll is charged to HTA's account.  HTA, in turn, bills the rental car company, who then charges the consumer.  *See* Plaintiff's Original Petition, ¶ 14.

Participating rental car companies charge consumers a per-day rental fee for using HTA's services—typically about $4.00 per day, plus the amount of any tolls incurred.  The daily rental rate applies whether any actual tolls are incurred or not.  Thus, consumers can pay $5.00 for a single $1.00 toll, if they rent a car for one day.  If the car is rented for two days, that $1.00 toll can cost $9.00.  HTA and rental companies also profit by charging consumers tolls at non-discounted rates, even though HTA is paying only the discounted subscriber toll.  This upcharge can be as much as 20-30% higher than the toll HTA actually paid to the tolling authority as a subscriber.  By burning

the consumer from both ends, HTA has enjoyed fat margins and has not, before now, been challenged in the free market.  *See* Plaintiff's Original Petition, ¶ 15.

BancPass, via PToll™, has designed a better alternative for the consumer. When a consumer rents a vehicle, the consumer can simply "decline" the optional toll package provided by HTA and take a picture of the rental car's license plate with his/her smartphone.  Through the PToll™ application, the consumer will then upload this information to BancPass to tell the system that the consumer is driving this vehicle now and for how long, and to bill his/her BancPass account for tolls charged to that license plate.  The consumer will only pay for what is needed, and avoids the daily fees that HTA, through the rental car company, would have otherwise charged.  *See* Plaintiff's Original Petition, ¶ 16

Rental car consumers finally have a choice in how they pay tolls: use BancPass or use HTA.  *See* Plaintiff's Original Petition, ¶ 17.

In an effort to bully and intimidate BancPass, an attorney representing HTA sent BancPass a letter, dated September 30, 02014, threatening to take various steps to block BancPass from freely competing in the rental car tolling market, and admitting that HTA has already taken certain anti-competitive actions to prevent BancPass from competing.[1]  *See* Plaintiff's Original Petition, ¶ 18.  The September 30th letter stated in relevant part:

> By enabling and encouraging users to register rental cars through the PToll app, you are intentionally interfering with the contract between the users and their rental car agencies and creating a litany of potential billing problems.  For this

---

[1] A true and correct copy of the September 30, 2014 letter was attached to Plaintiff's original petition and may, therefore, be considered by this Court in ruling on the current motion.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

reason, HTA demands that you immediately stop promoting use of the PToll App by rental car drivers and add disclosures to the App prohibiting such use.

….

As someone who is also engaged in efforts to simplify management of tolls across various State platforms, we would expect you to understand and respect this process. Instead, you are intentionally interfering with the contracts between the Rental Agencies and rental car drivers by encouraging rental car drivers to pay for tolls through PToll instead.   This intentional interference is recognized as unlawful tortious conduct in all fifty (50) states…

….

In order to avoid this administrative nightmare, HTA has no choice but to aggressively pursue a bar to the PToll App.  As you are likely already aware, HTA has sent requests to the App Store and Google Play requesting removal of the PToll App.  If needed, HTA will meet with each State Authority to convince them that prioritizing PToll users over fleet registrants is both unlawful and costly.  HTA will also take action in court to enforce its rights, including by seeking injunctive relief.

There is a possibility, however, that this legal battle will not be necessary, and that a co-existence agreement can be reached.  As we understand it, the primary purpose of the PToll App is to permit drivers to manage payment of tolls electronically without the need for a transponder or account with a particular State Authority.  This purpose does not rely on rental car drivers to succeed.  Accordingly, HTA proposes that BancPass agree not to encourage or permit users of the PToll App to register vehicles that are part of any Rental Agency fleet.  Thus, BancPass would need to:

(1) Immediately cease and desist advertising for the PToll App directed at rental car drivers, including advertising in airports, travel magazines, and other publications and venues directed toward rental car drivers;

(2) Immediately remove the provision in the "FAQs" section of the PToll App promising future functionality with respect to rental vehicles;

(3) Add a provision to the Terms of Use for the PToll App prohibiting registration of rental vehicles, to be approved by HTA; and

(4) Add a disclosure, to be displayed clearly and conspicuously in the footer of all screens of the PToll App, prohibiting registration of rental vehicles, to be approved by HTA.

By taking these actions, BancPass would avoid litigation by HTA, would bring the PToll App into compliance with the law, and would drastically reduce the potential for billing problems with its own customers.  We believe this proposal is fair and in the best interest of all involved.  However, if BancPass is unwilling to consider it, or does not respond to HTA, HTA will have no choice but to move forward as described above.

*See* Ex. A to Plaintiff's Original Petition.  In addition, BancPass has learned that HTA has actually sent a letter to the Texas Department of Transportation complaining of TXDOT's processing of tolls for BancPass customers, and threatening "to take any and all legal actions necessary to protect our rights."  *See* Plaintiff's Original Petition, ¶ 20.

HTA's initial attempts to shut down BancPass were, unfortunately, at least partially successful.  On October 6, 2014, at 6:41 p.m., BancPass received an email from Google Play® informing it that PToll™ had been removed from the Google Play® store.  After it was informed of the baselessness of HTA's accusations, Google reinstated the PToll™ app the next day.  *See* Plaintiff's Original Petition, ¶ 22.

BancPass's technology is not only available for consumers; it is also available as a toll collection solution for tolling authorities.  HTA's threats to contact, and its actual contact with, various tolling authorities in attempt to block BancPass from being able to provide toll processing services could further damage BancPass's business, since BancPass must contract with tolling authorities in order to be able to process tolls for consumers.  *See* Plaintiff's Original Petition, ¶ 23.

### III.   ARGUMENTS AND AUTHORITIES

In its petition, BancPass alleges claims for tortious interference and tortious interference with prospective business relations, and requests declaratory relief.   The petition provides Defendant with fair notice of these claims, and Defendant's motion to dismiss should be denied.

### A.   Rule 12(b)(6) Standard

Motions to dismiss for failure to state a claim are generally viewed with disfavor. *See*, e.g., *Collings v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). In ruling on a Rule 12(b)(6) motion to dismiss, a trial court is to accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff.   *Hale v. King*, 642 F.3d 492 (5th Cir. 2011) ("Under the 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff.").   The complaint should be construed in the light most favorable to the plaintiff, its allegations taken as true, and all reasonable inferences that can be drawn from the pleading should be drawn in favor of the pleader. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).   "All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists."   5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE §1357 (3d ed. 2014).

To pass muster under Rule 12(b)(6) "[a] complaint need not contain 'detailed factual allegations' but must include sufficient facts to indicate the plausibility of the claims asserted raising the 'right to relief above the speculative level."   *Steward v. International Ass'n of Machinists and Aerospace Workers*, 16 F.Supp.3d 783, 791 (S.D. Tex. 2014).   In light of this liberal pleading standard motions to dismiss under Rule 12(b)(6) are rarely granted.   5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL.,

FEDERAL PRACTICE & PROCEDURE §1357 (3d ed. 2014).   Indeed, Wright and Miller suggest that:

> As a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted by the district court only in the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief.  In other words, dismissal is justified only when the allegations of the complaint itself clearly demonstrate that whatever interpretation is given to the facts the plaintiff does not have a claim that is legally redressible; in a real sense, the plaintiff has pleaded himself out of federal court.

*Id*.  Even where a District Court determines a complaint falls short, courts typically will give the plaintiff leave to file an amended complaint.  *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179 (5th Cir. 1980) (holding, leave to amend should have been granted, and case should not have been dismissed under Rule 12(b)(6)).

## B.  Plaintiff has stated a claim for declaratory relief

Pursuant to the Declaratory Judgment Act, a party may request declaratory relief in a case of actual controversy, in which the Court may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief could be sought.  28 U.S.C. §2201(a).  "Fifth Circuit law provides three factors for district courts to consider in determining whether to adjudicate a declaratory judgment action: (1) whether the action is justiciable; (2) whether the court has authority to grant relief; and (3) whether the court should exercise its discretion to decide the action based on the factors stated in *St. Paul Ins. Co v. Trejo*."  *Southwestern Bell Telephone Co. v. Fitch*, 643 F.Supp.2d 902, 907 (S.D. Tex. 2009).   An action is justiciable when there is an active controversy, not just a hypothetical, or conjectural controversy.   *Id*.   As demonstrated below, that is true in this case.  The court has authority to grant relief

where there is no concurrent state action.  *Id.*  No such action exists here.  Moreover, Defendant has not argued that any of the *Trejo* factors weigh in favor of dismissal, and HTA has not even argued, let alone demonstrated, that early dismissal at this stage is warranted on that basis.  See *Id* at 907-08.  Accordingly, BancPass has adequately stated a claim for declaratory relief.

### 1.    Plaintiff seeks a declaration that HTA's proposed agreement is a per se violation of section one of the Sherman Act

HTA complains at length that BancPass has failed to adequately plead an anti-trust claim. However, HTA's argument misses the point that, as pled, BancPass's petition does not attempt to assert a cause of action for any antitrust violation(s). Instead, the petition requests a declaration that if BancPass were to accept the market allocation proposal demanded by HTA, the resulting agreement would be a per se violation of the Sherman Act.[2]

A market allocation scheme exists where competitors agree to a division of a market, whether the allocation be geographical, territorial, or by customers; such a scheme is a per se violation of section one of the Sherman Act.  *See United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078,1090 (5th Cir. 1978) ("We hold that the allocation of customers is a per se violation of Section One of the Sherman Act."); *United States v. Topco Associates, Inc.*, 405 U.S. 596, 608 (1972) ("[o]ne of the classic examples of a per se violation of Sec. 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition.").

---

[2] Although, BancPass has, at this point, made no Sherman Act claims, it reserves the right to amend its pleadings to make such claims should discovery reveal evidence supporting such a claim.

HTA has demanded that BancPass agree to limit its services to the non-rental car portion of the toll processing market and cede the rental car portion of the market to HTA:

> There is a possibility, however, that this legal battle will not be necessary, and that a co-existence agreement can be reached. Accordingly, HTA proposes that BancPass agree not to encourage or permit users of the PToll™ App to register vehicles that are part of any Rental Agency fleet.

*See* Ex. A to Plaintiff's Original Petition at p. 2 of 3. Thus, HTA has demanded that BancPass enter into an agreement to divide the toll processing market between the parties.

There is a live controversy between the parties, as HTA has threatened to continue contacting tolling authorities to demand they exclude BancPass from their tolling systems and to sue BancPass for tortious interference, unless BancPass agrees to enter into HTA's proposed market division agreement. Specifically, Defendant's September 30th letter threatens to use all means necessary, up to and including litigation unless BancPass agrees to remove itself as a tolling solution for rental cars and cede that portion of the toll processing market to HTA:

> By taking these actions, BancPass would avoid litigation by HTA, [and] would bring the PToll™ app into compliance with the law. …However, if BancPass is unwilling to consider it, or does not respond to HTA, HTA will have no choice but to move forward as described above.

*See* Ex. A to Plaintiff's Original Petition at p. 3 of 3. HTA's motion completely ignores the letter it sent BancPass, despite the fact that it was attached to Plaintiff's Original Petition that HTA now seeks to have dismissed.

BancPass's petition states a claim for a declaration that if it agrees to such a division of the tolling market, it would constitute a per se violation of the Sherman Act.[3] Despite HTA's attempts to setup a straw-man claim for an indeterminate antitrust violation, or a section 2 monopolization claim, BancPass asserts no such causes of action.  Accordingly, Defendant's arguments are without merit, and the motion to dismiss this declaratory judgment claim should be denied.

### 2. BancPass has standing to seek a declaratory judgment regarding a potential antitrust violation

BancPass has standing to bring the request for a declaration that entering into HTA's proposed agreement would be a per se violation of the Sherman Act.  BancPass is directly an "interested party" in the dispute.  28 U.S.C. §2201.  Indeed, it is the legal effect of BancPass's own conduct that is at issue in this claim, as BancPass is attempting to prevent harm to itself by obtaining a determination that agreeing to HTA's demand could result in future Sherman Act liability.  It is well established that declaratory relief is available to a party seeking a judicial declaration on the legality of a pending action.  *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE §2751 (3d ed. 2014). ("[Declaratory action] relieves potential defendants 'from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never.'  It permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty and it helps avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants.")

---

[3] The same analysis applies for Texas Free Enterprise and Antitrust Act.  TEX. BUS. & COM. CODE §15.01, et al.

HTA still argues that there is not an actual, existing controversy between the parties, despite the fact that it has threatened to continue to demand tolling authorities cease doing business with BancPass and threatens to sue BancPass for tortious interference if it does not cede the rental car portion of the toll processing market to HTA, a threat it repeated in the introduction to its motion to dismiss.  HTA has presented BancPass with a Hobson's choice.  On the one hand, BancPass could agree to divide the tolling market with HTA and potentially be susceptible to section 1 Sherman Act claims, or, on the other hand, face continued fights at tolling authorities, and tort claims by HTA.  That is a genuine controversy, and one in which BancPass's rights are directly implicated.

HTA also argues that BancPass's claim should be dismissed on the basis that BancPass lacks standing because BancPass did not specifically allege a danger of future harm.  While this statement is an over simplification of the holdings in the cases cited by Defendant, even if HTA's formulation were correct, BancPass has amply alleged the danger of future harm, both in the risks BancPass would face if it violates section one of the Sherman Act, and for the potential loss of an entire class of customers should BancPass remove itself from that portion of the toll processing market.[4]  See Plaintiffs Original Petition, ¶ 38.  BancPass is an interested party under the declaratory judgment act, and the motion to dismiss should be denied.

---

[4] For example, the standard articulated in the *City of Los Angeles v. Lyons*, 461 U.S. 95,102 (1983) case is actually for injunctive relief, while *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) addresses conduct that already occurred and was moot because the incident had already occurred and had only the speculative chance to reoccur.  Neither case applies here.

**3.     BancPass has standing to seek a declaratory judgment as to customer's freedom to lawfully choose BancPass's service over HTA's**

BancPass has requested that the Court grant declaratory relief that rental car customers have the right to choose to use BancPass's PToll™ app to pay tolls instead of HTA's service and that the continued marketing and operation of PToll™ to rental car customers is lawful.  BancPass also has standing to assert this claim.

There can be no question that there is a live dispute between BancPass and HTA regarding this issue.  HTA demonstrates this in its own motion:

> Defendant [sic] is the one that actually has been interfering with the contracts between rental car companies and their customers and that Defendant [sic] also has been interfering with HTA's contracts with HTA's customers.  That is what this case should actually be about.

*See* Defendant's Rule 12(b)(6) Motion to Dismiss at 2.  Defendant also demonstrated the existence of a live dispute in its September 30th letter:

> [Bancpass is] intentionally interfering with the contracts between Rental Agencies and rental car drivers by encouraging rental car drivers to pay for tolls through PToll™ instead.  This intentional interference is recognized as unlawful tortious conduct in all fifty (50) states.

*See* Ex. A to Plaintiff's Original Petition at p. 2 of 3.  HTA has repeatedly threatened to sue BancPass on this issue.  There is, thus, an actual controversy on this issue.

In addition, BancPass is an interested party and has standing to seek this declaration.  *See* 28 U.S.C. §2201 ("any court… may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.")

Here, BancPass's interests are directly implicated by HTA's threats to sue and by HTA's claim that BancPass is legally prohibited from competing with HTA for the toll

processing business of rental car consumers.  Of course BancPass is not a party to any contract between rental car companies and/or HTA and rental car consumers; to the contrary BancPass <u>competes</u> with those contracts.  BancPass is not trying to enforce those contracts, which might, as HTA contends, have required that BancPass be a party (or third party beneficiary) to them.  Instead, BancPass simply seeks declaratory relief that it may compete with HTA and the rental car companies.  Fortunately, the rental car companies themselves agree that rental car consumers may choose to use BancPass's PToll™ instead of the service they and HTA offer.  As pled in BancPass's Original Petition, the rental car companies represent to consumers that the toll processing service is "optional," and that consumers may decline HTA's service.  As this case develops, BancPass expects to be able to provide evidence that rental car contracts typically contain language to the effect that consumers may use other devices to pay tolls.

BancPass's ability to do business with rental car consumers is directly implicated by the live dispute between the parties on this issue.  Accordingly, BancPass has standing, and the motion to dismiss this declaratory judgment claim should be denied.

### C.   BancPass has stated claims for tortious interference and tortious interference with prospective relations

The elements of tortious interference with contract under Texas law are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damages or loss.  *Prudential Ins. Co. of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).  Here, BancPass's Original Petition amply pleads each of these elements.  BancPass has plead three distinct types of contracts with regard to its

PToll™ app: (1) between BancPass and Google, and BancPass and Apple for the distribution of PToll™; (2) between BancPass and tolling agencies for integration and use of the PToll™ app on the authorities' toll roads; and (3) between BancPass and the consumers who have downloaded and use the PToll™ app.  *See* Plaintiff's Original Petition, ¶ 25.

As specifically laid out in the petition: "BancPass has contracts with both Google Play store and Apple to distribute the PToll™ app."  *See* Plaintiff's Original Petition, ¶ 25.  As alleged in the Original Petition, HTA has admitted, in the September 30th letter, that it has taken steps to intentionally interfere with those contracts:

> HTA has sent requests to the App Store and Google Play requesting removal of the PToll™ app. HTA has willfully and intentionally interfered with the contracts between BancPass and Google, and BancPass and Apple, by writing letters to both Google and Apple demanding they remove the PToll™ app.

*See* Plaintiff's Original Petition, ¶ 26.  It is not an implausible leap to conclude that HTA's admitted actions in demanding Google pull down PToll™, proximately resulted in Google actually pulling down PToll™.  Apple may still remove the PToll™ app from iTunes.

After Google removed the PToll™ app from the Google Play Store, it was unavailable for download by consumers, resulting in damages to BancPass, which in essence, was unable to "sell" its product or service.[5]  Thus, the petition pleads the existence of contracts, intentional and willful interference by HTA with those contracts,

---

[5] Similarly, tolling authorities BancPass was soliciting to do business with would likewise be unable to download the app during this time.

damages, in the form of lost sales and lost toll transactions, and that HTA's actions proximately caused those damages.

BancPass has also pled prospective relations with both additional tolling authorities and new customers seeking to download and utilize the PToll™ app: "HTA's actions interfere with potential contracts with consumers and additional tolling authorities." *See* Plaintiff's Original Petition, ¶ 28.   BancPass already has customers successfully using the app, and as its solution becomes known by the general public through legitimate advertising such as radio endorsements, ads placed in travel magazines, and other marketing media, more toll road consumers download PToll™ on their smartphones and other devices.   BancPass can show that its PToll™ app is downloaded daily, which creates a reasonable probability that consumers were attempting to download the PToll™ app when it was not available on Google.   HTA cites no authority for its contention that BancPass must specifically identify each potential customer who searched for PToll™ and was unable to download it, and Texas authority actually seems to establish the opposite.   *See Bradford v. Vento*, 997 S.W.2d 713, 732 (Tex.App.- Corpus Christi 1999), *rev'd in part on other grounds*, 48 S.W.3d 749 (Tex. 2001) (holding generally, the plaintiff does not need to identify a specific prospective contract that was interfered with).

The unavailability of the app also affected presentations with tolling authorities who were interested in the PToll™ application and how it could improve their tolling, but these tolling authorities were unable to download the app in advance of the presentation.   As alleged in the petition:

> HTA's interference has been a proximate cause of harm to BancPass, and BancPass incurs actual damages and losses when consumers are unable to obtain the PToll™ app, and as BancPass is unable to demonstrate its product to additional tolling authorities.

*See* Plaintiff's Original Petition, ¶ 29.

BancPass has not yet had the opportunity to see all of the correspondence that HTA sent to tolling authorities, Google and Apple.  Discovery should reveal the content of such communications and enable BancPass to plead HTA's malfeasance in even greater detail.

Since BancPass was able to have PToll™ reinstated by the Google Play store, HTA appears to argue that this case should be dismissed because it believes the damages BancPass has suffered are small.[6]  The fact that a defendant contests an amount of damages does not justify dismissal pursuant to Rule12(b)(6).  Moreover, the facts that BancPass's damages are unliquidated, and that the exact amount of damages suffered is not yet known, likewise do not warrant dismissal.  *See Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1226 (7th Cir. 1995) (plaintiff not required to itemize damages in complaint).  Indeed, BancPass's petition appropriately pleads damages "in an amount within the jurisdictional limits of this court" as required by Texas Rule of Civil Procedure 47.

BancPass has sufficiently pled its tortious interference claims, and HTA's motion to dismiss should be denied.

---

[6] This is ironic considering that it was HTA who removed this case on diversity grounds, specifying that the amount in controversy exceeds this Court's jurisdiction.

### D.   Should the court grant Defendant's motion in any part, Plaintiff requests leave to amend

Should this court find that Defendant's motion is meritorious in any respect and be inclined to grant it, Plaintiff respectfully requests leave to amend.  "Generally, a court will not dismiss without leave to amend on the first challenge to the plaintiff's complaint." *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE §1357 (3d ed. 2014). ("[D]istrict court normally will give the plaintiff leave to file an amended complaint.").

BancPass drafted and filed its petition in state court in accordance with Texas law and pleading rules.  Should the court determine there are any deficiencies under federal pleading rules, BancPass requests the opportunity to amend to address any such issues.[7]  Finally, at this time, BancPass does not possess all of the evidence against HTA regarding its conduct, but BancPass has pled based on the evidence in its possession, the letter BancPass received from HTA admitting defendant's actions, and events that took place shortly after the letter was received.  BancPass respectfully requests the opportunity to conduct discovery to learn more details regarding HTA's conduct.

---

[7] Although Defendant characterizes its motion as a motion to dismiss for failure to state a claim its motion as it is written actually seeks a more definite statement.  In fact, in its second sentence, Defendant's motion complains that "Plaintiff's claims lack the specificity required for a proper pleading."  *See* Defendant's Rule 26(b)(6) Motion to Dismiss at 1.  To the extent the court agrees, the appropriate relief would be to order a more definite statement, which Plaintiff is willing to do if so ordered.  *See* FED. R. CIV. P. 12(E).

## IV.   <u>CONCLUSION</u>

BancPass has met the minimum threshold of the pleading requirements and has provided a short statement with facts that puts HTA on notice of the claims against it. HTA is aware of its actions, and has admitted such to BancPass in the September 30th letter.  BancPass seeks relief for: (1) tortious interference with existing contracts and prospective business relations; (2) declaratory relief that rental car consumers have the right to choose PToll™ as an alternative to HTA's service; and (3) declaratory relief that if BancPass were to agree to HTA's demand to cede the rental car toll processing market to it, such an agreement would be a per se violation of section one of the Sherman Act.  BancPass's petition demonstrates it has standing to assert each of these claims, and sets out facts that plausibly support each cause of action.  The motion to dismiss should, therefore, be dismissed.

## V.   <u>PRAYER</u>

Wherefore, Plaintiff BancPass respectfully requests that HTA's Rule 12(b)(6) Motion to Dismiss be denied, or in the alternative, should the court believe the motion should be granted in any part that BancPass be granted the opportunity to amend, and that BancPass have all such further relief to which it may be justly entitled.

Respectfully submitted,

Thomas M. Fulkerson
tfulkerson@fulkersonlotz.com
State Bar No. 07513500
Jerry L. Mitchell
jmitchell@fulkersonlotz.com
State Bar No. 14214650
Gavin K. Uttecht (admitted *pro hac vice*)
guttecht@fulkersonlotz.com
State Bar No. 24069111
FULKERSON LOTZ LLP
700 Louisiana Street, Suite 5200
Houston, Texas 77002-2773
Telephone:  713.654.5800
Facsimile:  713.654.5801

J. David Rowe
drowe@dbcllp.com
State Bar No. 00794564
DUBOIS, BRYANT & CAMPBELL, LLP
700 Lavaca, Suite 1300
Austin, Texas 78701
Telephone:  512.381.8020
Facsimile:  512.457.8008

ATTORNEYS FOR PLAINTIFF
BANCPASS, INC.

## CERTIFICATE OF SERVICE

The undersigned certifies a true and correct copy of the foregoing document was electronically filed on December 15, 2014 with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Gregory J. Casas
casasg@gtlaw.com
Elizabeth Ross Hadley
hadleye@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone:  512.320.7200
Facsimile:  512.320.7210


ATTORNEYS FOR DEFENDANT HIGHWAY
TOLL ADMINISTRATION, LLC

_____
Thomas M. Fulkerson