**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BANCPASS, INC.** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Civil Action No. 1:14-cv-01062-SS** |
| **HIGHWAY TOLL ADMINISTRATION, LLC,** | § | |
| **Defendant.** | § | |

---

| | |
|---|---|
| **HIGHWAY TOLL ADMINISTRATION, LLC,** | § |
| **Counter-Plaintiff,** | § |
| **v.** | § |
| **BANCPASS, INC.,** | § |
| **Counter-Defendant.** | § |

**DEFENDANT/COUNTER-PLAINTIFF HIGHWAY TOLL ADMINISTRATION, LLC'S COUNTERCLAIM**

COMES NOW Defendant/Counter-Plaintiff, Highway Toll Administration, LLC ("HTA"), and pursuant to Rule 13 of the Federal Rules of Civil Procedure hereby files its Counterclaim for a declaratory judgment and would respectfully show the Court as follows:

## I.
## PARTIES

1. HTA is a New York limited liability company with its principal place of business at 66 Powerhouse Rd., Suite 301, Roslyn Heights, New York, 11577.

2. Upon information and belief, Counter-Defendant BancPass, Inc. ("BancPass"), is a Texas corporation with its principal place of business at 3839 Bee Caves Rd. #100, Austin, Texas 78746.

## II.
## FACTS

3. HTA is a technology company that acts as a liaison between major car rental agencies and state tolling authorities. Specifically, HTA has separately contracted with Avis Budget Car Rental, LLC ("Avis") and Enterprise Holdings, Inc. ("Enterprise"), who operate Avis and Enterprise rental cars and their respective affiliates.

4. HTA has entered into agreements with these car rental agencies and tolling authorities to facilitate the payment of highway tolls incurred by the rental agencies' customers during the customers' use of rental vehicles.

5. Under HTA's agreements with car rental agencies, HTA provides toll processing services through both (1) radio-frequency identification toll tags that are charged to HTA's account when a rental car driver uses the tag to pay a toll and (2) registering the license plates used on rental cars to HTA for purposes of assessing tolls. When a car rental customer incurs a toll while driving a rental vehicle, the tolling authority scans either the toll tag or the license plate and bills HTA for the cost of the toll.

6. Upon information and belief, the relevant car rental agencies offer their customers the option of using HTA's automated toll payment system outlined above. If a customer chooses

to avail itself of this option, HTA bills the car rental agencies for the cost of the toll and related fees incurred by the customer.

7. Upon information and belief, BancPass offers a separate automated method for customers to pay tolls through a downloadable smartphone application called "PToll." According to BancPass, a customer can create an account with PToll, register the license plate number of a vehicle that the customer intends to drive with his PToll account, and then register a method of payment. When a license plate registered with PToll uses a toll road that participates in the PToll system, the toll road reads the license plate, registers the transaction with the relevant PToll account, and PToll then bills the holder of that account for the cost of the toll plus an additional fee.

8. On September 30, 2014, an HTA representative sent BancPass a letter concerning the PToll application. A copy of this letter is attached to this counterclaim as Exhibit A.

9. The letter also informed BancPass of potential administrative problems that might arise from registering a single license plate with both HTA and PToll. The letter provides an example of instances where registering the same license plate with multiple automated payment systems might result in double-billing to the customer or additional administrative burdens for tolling authorities seeking to determine which automated billing system to charge for a specific toll.[1]

10. Based on its concern of a potential "administrative nightmare," HTA informed BancPass that HTA would be contacting tolling authorities to address the problems that arise when license plates currently registered as associated with HTA are registered, unregistered, and reregistered concurrently with the PToll application.[2]

---

[1] *See* Ex A at 3.
[2] *See* Ex. A at 3.

11. Finally, the letter offers an alternative option through which BancPass could avoid both (1) potential interference with car rental agencies' contracts with their customers and (2) potential regulatory dispute with HTA.[3]

12. This litigation followed with BancPass's Original Complaint being filed on October 29, 2014. A copy of BancPass's Original Complaint is attached to this counterclaim as Exhibit B.

**III.**

**CAUSES OF ACTION**

**COUNT I**

**DECLARATORY JUDGMENT THAT HTA DID NOT TORTIOUSLY INTERFERE WITH BANCPASS'S CONTRACTS WITH GOOGLE OR APPLE**

13. HTA incorporates herein by reference and realleges paragraphs 1 through 12 as if fully set forth herein.

14. BancPass alleges that it has contracts with "Google and Apple" to offer the PToll application through their respective application stores, "Google Play" and the "App Store."[4] In its September 2014 letter, HTA informed BancPass that HTA "sent requests to the App Store and Google Play requesting removal of the PToll App."[5]

15. BancPass asserts that Google temporarily removed the PToll application from Google Play based on HTA's alleged letter to Google. However, BancPass asserts that Google Play reinstated the PToll application shortly thereafter. BancPass has not alleged that customers attempted to download the PToll application from Google Play during the time that PToll was not available.

---

[3] *See* Ex. A at 3.
[4] *See* Ex. B at. 2-3.
[5] *See* Ex. A at 2.

16. BancPass has failed to allege any injury that it suffered as a result of HTA's letter to Google. Specifically, BancPass does not identify any customer who attempted to download the PToll application during the time that PToll was not available for download on Google Play. Furthermore, BancPass does not allege that customers who attempted to download the PToll application from Google Play during the time that it was not available did not download the application later once Google Play had reinstated it. Finally, BancPass has not alleged that customers who attempted to download the PToll application from Google Play during the relevant time period were unable or unwilling to download the application from the App Store. Therefore, BancPass has failed to demonstrate that it was injured by HTA's letter to Google. Given that BancPass has not suffered an actual injury that was proximately caused by HTA's letter to Google, BancPass cannot show that HTA interfered with BancPass's contract with Google.

17. Similarly, BancPass does not allege that HTA's letter to Apple interfered with BancPass's contract with Apple. BancPass does not assert that Apple took any action in response to HTA's letter, nor has it alleged that PToll was not available on the App Store at any relevant time. Therefore, BancPass has failed to demonstrate that it has suffered any actual, rather than theoretical, injury that was proximately caused by HTA's letter to Apple. Given that BancPass has not suffered an actual injury, BancPass cannot show that HTA interfered with BancPass's contract with Apple.

18. HTA therefore is entitled to a declaration of the Court as a matter of law that it did not interfere with BancPass's contracts with Google or Apple.

## COUNT II

## DECLARATORY JUDGMENT THAT HTA'S CONTRACTS WITH CAR RENTAL AGENCIES AND CAR RENTAL AGENCIES' CONTRACTS WITH CUSTOMERS DO NOT INTERFERE WITH BANCPASS'S CONTRACTS WITH BANCPASS'S CUSTOMERS

19. HTA incorporates herein by reference and realleges paragraphs 1 through 18 as if fully set forth herein.

20. Car rental agencies' customers are not obligated to use automated toll payment services. Nothing in HTA's contracts with car rental agencies require car rental agencies to compel customers to use automated toll payment services. A customer's decision to use automated toll services is purely voluntary.

21. Similarly, car rental agencies' contracts with their customers do not require customers to use toll roads. A customer's decision to use toll roads, and by extension HTA's services, is purely voluntary. Therefore, car rental agencies' contracts with their customers that give customers the option of using HTA's services do not interfere with BancPass's ability to contract with customers through the PToll application.

22. HTA is entitled to a declaration of the Court as a matter of law that HTA's contracts with car rental agencies do not interfere with BancPass's ability to contract with customers.

## COUNT III

## DECLARATORY JUDGMENT THAT HTA HAS NOT VIOLATED THE SHERMAN ACT OR TEXAS FREE ENTERPRISE AND ANTITRUST ACT

23. HTA incorporates herein by reference and realleges paragraphs 1 through 22 as if fully set forth herein.

24. BancPass asserts that HTA's "demand that BancPass cease marketing PToll for use in rental cars" constitutes a per se violation of the Sherman Act and the Texas Free Enterprise Act. According to BancPass, if BancPass had agreed to withdraw from the rental car market, BancPass and HTA "would create a horizontal market allocation and constitute a per se violation of the Sherman Act and Texas Free Enterprise and Antitrust Act." Essentially, BancPass contends that if BancPass had decided not to market PToll to rental car customers, HTA's letter to BancPass would constitute per se antitrust behavior.[6]

25. HTA disagrees with BancPass's characterization of HTA's letter. However, even assuming that HTA's letter could be construed as a demand that BancPass cease marketing the PToll app to rental car customers, BancPass has nevertheless failed to state a valid antitrust claim.

26. BancPass seeks an advisory opinion from this Court that if a theoretical agreement had been reached between BancPass and HTA for BancPass not to compete in the rental car market, that hypothetical agreement could violate antitrust laws. However, by its own allegations, BancPass did not enter into an agreement with HTA to refrain from entering into the rental car market. Therefore, BancPass's legal arguments about how a hypothetical horizontal market allocation that never came into existence might affect competition does not present an actual case or controversy. Without an actual agreement between BancPass and HTA, BancPass has not provided this Court with anything to review.

27. Similarly, BancPass cannot show that HTA's alleged request that BancPass refrain from operating in the rental car market produced any cognizable effect on competition that injured BancPass. BancPass did not refrain from participating in the rental car market.

---

[6] Ex. B at 9-10.

Therefore, no anticompetitive injury could have resulted. Thus, BancPass has failed to allege a valid antitrust claim.

28. HTA is entitled to a declaration of the Court that HTA's actual or alleged actions do not violate the Sherman Act or the Texas Free Enterprise and Antitrust Act.

## IV.
## ATTORNEYS' FEES

29. HTA incorporates herein by reference and realleges paragraphs 1 through 28 as if fully set forth herein.

30. HTA is entitled to recover and seek to recover from BancPass its reasonable attorneys' fees and costs pursuant to, *inter alia,* 28 U.S.C. §§ 2201-02 and Texas Civil Practice & Remedies Code §§ 37.009 and 38.001.

## V.
## REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, HTA respectfully request that BancPass be cited to appear and answer herein and that, upon final hearing hereof, HTA be awarded the relief sought hereinabove against BancPass including, but not limited to:

(a) A declaration that HTA has not interfered with BancPass's contract with Google;

(b) A declaration that HTA has not interfered with BancPass's contract with Apple;

(c) A declaration that HTA's contracts with car rental agencies do not interfere with BancPass's contracts with its customers;

(d) A declaration that car rental agencies' contracts with their customers do not interfere with BancPass's contracts with its customers;

(e) A declaration that HTA has not violated the Sherman Act or Texas Free Enterprise and Antitrust Act;

(f) An award of attorneys' fees and costs, all costs of court;

(g) An award of such other and further relief, whether general or special, at law or in equity, to which Counter-Plaintiff may be justly entitled.

Respectfully submitted,

**GREENBERG TRAURIG LLP**

By: */s/ Gregory J. Casas*
Gregory J. Casas
State Bar No. 00787213
Federal Bar No. 16836
E-Mail: casasg@gtlaw.com
Alan Wendler Hersh
State Bar No. 24080944
Federal Bar No. _______
E-Mail: hersha@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

**ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF, HIGHWAY TOLL ADMINISTRATION, LLC.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of April, 2015, the above and foregoing document was filed electronically with the Clerk of Court using the CM/ECF system, and was served on all counsel who have consented to electronic service and served via Registered E-Mail or facsimile to counsel who have not consented to electronic service.

*/s/ Gregory J. Casas*
Gregory J. Casas