# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **BANCPASS, INC.** | § | |
| | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| vs. | § | |
| | § | |
| **HIGHWAY TOLL ADMINISTRATION,** | § | **CIVIL ACTION NO. 1:14-CV-01062-SS** |
| **LLC,** | § | |
| | § | |
| **Defendant/Counter-Plaintiff** | § | |

---

**DEFENDANT/COUNTER-PLAINTIFF HIGHWAY TOLL ADMINISTRATION, LLC'S MOTION FOR TRADITIONAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS AND PARTIAL SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM**

---

*AUS 536529855v7*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND .............................................................................................. 1

    A.    HTA Has Contracted to be the Exclusive Provider of Automated Tolling Services for Avis Car Rental, Enterprise Rent-A-Car, and Their Respective Affiliates. .................. 1

    B.    BancPass Develops Smartphone Application Called PToll and Encourages Rental Customers to Register Rental Vehicle's License Plate to PToll's Fleet. ....................... 3

    C.    HTA Sends Cease-and-Desist Letters to BancPass, TxDOT, Apple, and Google to Try to Prevent Customers from Using PToll to Breach Their Rental Agreements. ............. 4

    D.    BancPass Brings Suit, Alleging Various Antitrust and Contract Claims, But Ultimately Asserting that HTA's Letters to TxDOT, Apple, and Google were Defamatory. ......... 6

III. DISCUSSION ................................................................................................................... 7

    A.    Standard of Review ..................................................................................................... 7

    B.    The Court Should Dismiss Plaintiff's Defamation Claim and Claim for Declaratory Judgment regarding Enterprise's and Avis's Rental Agreements................................... 8

        1.    BancPass lacks standing to pursue a declaratory judgment regarding rental contracts and tolling contracts to which it is not a party........................................ 8

        2.    BancPass's defamation claims must fail as a matter of law because HTA's letters to Apple, Google, and TxDOT were privileged communications connected to HTA's proposed judicial proceeding against BancPass. ..................................... 10

        3.    The alleged defamatory statements in HTA's letters merely express a legal opinion regarding undisputed facts, and thus like all opinions cannot constitute a false statement of fact. ......................................................................................... 12

        4.    BancPass, as a corporation, is not capable of suffering mental anguish, nor should it be permitted to recover for the mental anguish of its employees. ...................... 14

        5.    BancPass is barred as a matter of law from recovering exemplary damages because it did not request that HTA retract its allegedly defamatory statements within 90 days of learning that the statements were made. .................................. 15

    C.    Based on the four corners of the contracts, a customer's use of PToll for rental vehicles breaches the terms of Avis's and Enterprise's rental agreements.................. 17

        1.    Avis's e-Toll Program........................................................................................... 18

    2.        Enterprise TollPass Program.................................................................................. 19

IV. CONCLUSION......................................................................................................... 20

*AUS 536529855v7*

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bayou Fleet P'ship v. Clulee,*
    150 So.3d 329 (La. App. 5th Cir. 2014) ...............................................................15

*Bentley v Bunton,*
    94 S.W.3d 561 (Tex. 2002).................................................................................12

*Burch v. Coca-Cola Co.,*
    119 F.3d 305, 325 (5th Cir. 1997) ......................................................................12

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)........................................7

*Daystar Residential, Inc. v. Collmer,*
    176 S.W.3d 24 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)...................10

*Fordoche, Inc. v. Texaco, Inc.,*
    463 F.3d 388 (5th Cir. 2006) ...............................................................................8

*Hancock v. Variyam,*
    400 S.W.3d 59 (Tex. 2013).................................................................................15

*Hellmuth, Obata & Kassabaum, L.P. v. Efficient Energy, LLC,*
    No. H-14-2945, 2016 U.S. Dist. LEXIS 19904 (S.D. Tex. Feb. 18, 2016) .....12, 13

*John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.,*
    17 S.W.3d 721 (Tex. App—Austin 2000, pet. denied).......................................17

*Kona Tech. Corp. v. S. Pac. Transp. Co.,*
    225 F.3d 595 (5th Cir. 2000) ...............................................................................9

*Marathon Financial Ins., Inc. v. Ford Motor Co.,*
    591 F. 3d 458 (5th Cir. 2009) ..............................................................................7

*Reagan v. Guardian Life Ins. Co.,*
    166 S.W.2d 909 (Tex. 1942)...............................................................................10

*Russell v. Clark,*
    620 S.W.2d 865 (Tex. App.—Dallas 1981, ref. n.r.e.)...................................10, 11

*Senior Care Res., Inv. v. OAC Senior Living, LLC,*
    442 S.W.3d 504 (Tex. App.—Dallas 2014, no pet.)............................................10

iv

*Shell Oil Co. v. Writt*,
   464 S.W.3d 650 (Tex. 2015)..........................................................................10, 11

*State Farm Fire & Cas. Co. v. Lange*,
   480 Fed. Appx. 309 (5th Cir. 2012).............................................................17, 18

*Vecchio v. Jones*,
   No 01-12-00442-CV, 2013 Tex. App. LEXIS 8324 (Tex. App.—Houston [1st
   Dist.] Jul. 9, 2013, no pet.).................................................................................13

*Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*,
   434 S.W.3d 142 (Tex. 2014).......................................................................14, 15

*Wolf Street Supermarkets, Inc. v. McPartland*,
   108 A.D.2d 25 (N.Y App. Div. 1985) ...............................................................15

**Statutes**

Fed. R. Civ. P. 56(c) ..............................................................................................7

TEX. CIV. PRAC. & REM. CODE § 73.055(c)......................................................16, 17

TEX. CIV. PRAC. & REM. CODE § 73.055(d)............................................................17

*AUS 536529855v7*

# I.
## INTRODUCTION

Defendant Highway Toll Administration, LLC ("HTA") files this Motion for Summary Judgment, seeking the dismissal of all of Plaintiff BancPass, Inc.'s ("BancPass") claims and granting of partial summary judgment for HTA's counterclaim. HTA has always asserted, as it does here, that BancPass's smartphone product tortiously interferes with HTA's contractual right to be the exclusive provider of tolling services to certain rental car agencies. BancPass's claim that HTA's statements asserting these contractual rights constitute defamation against BancPass must fail. Therefore, the Court should grant this Motion for Summary Judgment, dismiss BancPass's claims, and grant partial summary judgment on HTA's claim that use of BancPass's product by rental car customers breaches those customer's rental agreements.

# II.
## FACTUAL BACKGROUND

**A.     HTA Has Contracted to be the Exclusive Provider of Automated Tolling Services for Avis Car Rental, Enterprise Rent-A-Car, and Their Respective Affiliates.**

HTA is a technology company that acts as a bridge between rental car companies and dozens of tolling authorities to ensure that tolls incurred on rental vehicles are timely paid. Essentially, if a rental vehicle incurs an "electronic toll"—meaning a toll that is not contemporaneously paid in cash—the relevant tolling authority scans either HTA's radio-based transponder ("tag") that is equipped in the vehicle or captures an image of the vehicle's license plate, which is pre-registered to HTA's "fleet account"; bills HTA for the cost of the toll; and HTA then uses the rental agency's information to bill the appropriate rental customer. To accomplish this, HTA must separately contract with (1) the rental car agency to be the exclusive provider of tolling services for its rental vehicles and (2) tolling authorities throughout the country to be responsible for initially paying any tolls incurred by the rental agency's vehicles.

Specifically, HTA has contracted with Avis Budget Group, Inc.[1] ("Avis" or "ABG") and Enterprise Holdings, Inc.[2] ("Enterprise" or "EHI") to be the exclusive provider of electronic tolling services for each of these company's respective rental fleets.[3] Consistent with HTA's exclusivity, both Avis and Enterprise are contractually obligated to provide their respective rental customers with notice—included in each agency's rental agreement—that the customer's use of electronic toll roads constitutes the customer's agreement to pay HTA for the value of any toll, plus an administrative fee.[4] Specifically, Avis's and Enterprise's respective rental agreements provide as follows:

> **Avis e-Toll Program:** If you do not pay cash for tolls or the roadway does not accept cash payment you automatically opt into e-Toll service, pursuant to which you agree to pay us or our toll program administrator [HTA], with whom we will share your credit card/debit information, for all tolls incurred during your rental and all related fees, charges and penalties.[5]

---

[1]   Avis Budget Group is the parent company of, among others, Avis Car Rental, Budget Car Rental, and Payless Car Rental.

[2]   Enterprise Holdings is the parent company of, among others, Enterprise Rent-A-Car, National Car Rental, and Alamo Rent a Car.

[3]   The "Exclusivity" provision of HTA's contract with Avis, as amended, provides that "[d]uring the Term, [ABG] shall not obtain from any other party, nor shall it provide on its own behalf or account, any electronic tolling collection services anywhere in the United States, Canada or Puerto Rico." *See* excerpts from Amendment No. 3 to Toll Tag Services Agreement with ABG (the "Avis Contract"), attached hereto as **Exhibit A**, p. 2 (HTA002019). Similarly, the "Exclusivity" provision of HTA's contract with Enterprise provides that "[t]he parties acknowledge and agree that HTA shall be the exclusive provider to Enterprise and its affiliates . . . of all ETC [Electronic Toll Collection] Services. *See* excerpts from Second Amended and Restated Electronic Toll Collection Service Agreement (the "Enterprise Contract"), attached hereto as **Exhibit B**, p. 4 (HTA002039). Because these contracts contain commercially sensitive provisions, HTA has redacted all provisions that are not relevant to this motion.

[4]   The Avis Contract provides that Avis "will advise all affected Customers, and its rental agreements will provide that . . . the Customer's use of the Tag and/or *any electronic tolling lanes* constitutes his or her (A) agreement to pay the cash value of all tolls and other charges incurred by such Customer ("Tolls") and (B) authorization for HTA to charge the card used for the rental . . . ." Exhibit A, pp. 1-2 (HTA002018-2019). Similarly, the Enterprise Contract provides that Enterprise shall "at or before the time of the rental, advise all affected Customers that rental of an Eligible Vehicle equipped for ETC Services . . . constitutes their agreement to pay to HTA or Enterprise, as the case may be, the Convenience Charge and the higher of the applicable tolling authority's cash Toll rate . . . ." Exhibit B, pp. 2-3 (HTA002033).

[5]   *See* section 16 of Avis Car Rental's rental agreement, attached hereto as **Exhibit C**. This contractual language is repeated verbatim in Budget Car Rental's and Payless Car Rental's rental agreements, which are also attached as part of **Exhibit C**. Therefore, when HTA refers to the "Avis rental agreement," it is referring to the relevant and identical contractual language within all three of these contracts.

2

> **Enterprise Tollpass Program:**  Renter shall pay Owner, its affiliates or agents
> . . . a Tollpass convenience charge (TCC) (where available) of up to $5.00 per day
> of Rental Period for each day Vehicle is operated on a [video-based tolling]
> Service covered road and Vehicle operator does not pay an applicable toll.[6]

By initially paying all tolls incurred on these rental vehicles, HTA provides a valuable service to rental agencies, tolling authorities, and rental customers.  HTA assumes the cost and administrative burdens of matching a given toll to a specific rental agency, then matching that toll to a specific rental customer, and finally billing the customer for the toll.  Thus, HTA has reduced both costs to rental agencies and tolling authorities, as well as greatly reduced the number of unpaid tolls, fines, and penalties that would ultimately be passed to rental customers.

**B.**     **BancPass Develops Smartphone Application Called PToll and Encourages Rental Customers to Register Rental Vehicle's License Plate to PToll's Fleet.**

BancPass developed and operates a smartphone application called PToll[TM] ("PToll" or the "PToll app"), which it made publicly available in April of 2014.  [DKT 50, ¶ 7].  Customers can download the PToll app from either Apple Inc.'s "iTunes[®]" or Google Inc.'s "Google Play[®]" to the customer's smartphone, use their smartphone's camera to take a picture of their vehicle's license plate, and then register that license plate to BancPass's fleet.  [DKT 50, ¶ 8].  According to BancPass, it then registers the customer's license plate with the handful of tolling authorities with whom BancPass has contracted, and any electronic toll charged to that license plate by those tolling authorities is, at least in theory,[7] posted to the customer's PToll account.

---

[6]     *See* sections 3(b)(5) and 3(c)(4) of Enterprise Rent-a-Car's rental agreement, attached hereto as **Exhibit D**.  This contractual language is repeated verbatim in National Rent-A-Car's and Alamo Car Rental's rental agreements, which are attached as part of **Exhibit D**.  Therefore, when HTA refers to the "Enterprise rental agreement," it is referring to this identical contractual language within all three of these contracts.

[7]   Although not relevant to this motion for summary judgment, some tolling authorities have produced documents demonstrating that they do not automatically update their system with PToll's new license plates, and thus a customer's attempt to register a vehicle with PToll does not necessarily mean that tolls incurred will automatically post to the customer's PToll account.  Similarly, some tolling authorities have

BancPass has repeatedly made it clear that it has always intended and encouraged its customers to use PToll to pay tolls incurred on rental vehicles. [DKT 50, ¶ 9]. In fact, within four months of launching PToll, BancPass's President Glenn Deitiker made a public presentation at the International Bridge, Tunnel and Turnpike Association's ("IBTTA") that PToll and similar products were the "solution" to tolls incurred on rental vehicles.[8] Mr. Dietiker admitted, however, that "[i]n many cases there is no way for a [rental car] consumer to 'opt out' (or 'opt in') to an alternative" electronic toll payment method, demonstrating that BancPass knew that using PToll as an alternative to pay tolls on rental vehicles violated the terms of rental contracts.

## C. HTA Sends Cease-and-Desist Letters to BancPass, TxDOT, Apple, and Google to Try to Prevent Customers from Using PToll to Breach Their Rental Agreements.

Initially, and throughout the time relevant to HTA's alleged defamatory statements, BancPass had only contracted with the Texas Department of Transportation ("TxDOT") and related regional tolling authorities. Therefore, a customer could only use PToll to pay tolls incurred on toll roads in Central Texas region. However, even in this relatively small market, BancPass immediately began experiencing a "rental car problem" in which customers who attempted to register rental vehicles with PToll either had their tolls continue to be posted to HTA's fleet account; posted some—but not all—tolls to PToll; or the tolls remained unpaid.[9]

In July of 2014, BancPass's then Vice President of Sales, Rick Gegenheimer, approached HTA's CEO, David Centner, at the IBTTA Conference to discuss this rental car problem. Mr.

---

produced documents indicating that they do not allow BancPass to register license plates that have already been registered to other fleet accounts, such as HTA's.

[8] *See* excerpts from "A 13,000 Mile Test of National Interportability Using a License Plate and one Tag," presented by Glenn Deitiker as part of panel discussion during IBTTA 2014 Summit on All-Electronic Tolling, Managed Lanes & Interportability, San Diego, CA, Monday, July 21, 2014, attached hereto as **Exhibit E,** at pp. 2-8**.**

[9] *See* Exhibit E; *see also* email from G. Deitiker discussing rental car issue with PToll attached hereto as **Exhibit F**.

Gegenheimer explained the issues PToll customers were having with paying tolls on rental vehicles.

Upon learning that customers were using PToll in a way that breached HTA's exclusive right to manage and collect electronic tolls for Avis and Enterprise, HTA sent a letter to TxDOT, attached hereto as **Exhibit G**, explaining HTA's position that allowing customers to register Avis's and Enterprise's rental vehicles with PToll was a breach of HTA's contract with TxDOT. Specifically, HTA explained that under its contract with TxDOT, HTA has the exclusive right to register and pay tolls for vehicle's belonging to its fleet account, and therefore by allowing BancPass to temporarily register these same vehicles, TxDOT was breaching its contractual obligations. In response, TxDOT informed BancPass that PToll would not be operable until TxDOT could determine whether its fleet contracts and procedures could be amended to allow PToll to function for rental vehicles.

Approximately one month later, HTA sent a cease-and-desist letter to BancPass demanding that BancPass discontinue marketing PToll to rental customers. In this letter, attached hereto as **Exhibit H**, HTA informed BancPass that rental customer's use of PToll violates the terms of those customer's rental agreements. Furthermore, HTA warned that PToll could potentially create administrative and billing issues for tolling authorities, rental agencies, customers, and HTA. Therefore, HTA warned BancPass that HTA would be contacting Apple and Google to inform them that PToll encouraged this violation of a customer's rental agreement. Finally, the letter demanded that BancPass inform PToll customers that the product could not be used to pay tolls incurred on rental car customers.

As it warned, HTA sent letters to Apple and Google explaining HTA's position that the PToll app tortiously interfered with rental customer's rental agreements. These letters, attached

hereto as **Exhibit I** and **J**, respectively, were drafted and sent by HTA's former counsel and, as discussed more fully below, explained counsel's legal opinion regarding the implications of using PToll to register and pay tolls for rental vehicles. According to BancPass, Apple took no action whatsoever in response to HTA's letter. By comparison, Google took the PToll app down from the Google Store for approximately twenty-four hours while it reviewed HTA's complaint, but then reinstated that application and took no further action in response to HTA's letter.

**D.  BancPass Brings Suit, Alleging Various Antitrust and Contract Claims, But Ultimately Asserting that HTA's Letters to TxDOT, Apple, and Google were Defamatory.**

Approximately three months after BancPass received HTA's cease and desist letter, BancPass brought this underlying suit. [DKT 01-4]. This original complaint contained wide ranging accusations—including a claim that if BancPass had agreed to not market PToll to rental customers, HTA and BancPass would be involved in an antitrust conspiracy. [DKT 01-4, ¶¶ 37-42]. As this Court noted in its order denying HTA's motion to dismiss, BancPass's original complaint was "editorializing more than factually alleging causes of action." [DKT 09].

Although BancPass heavily publicized these original claims in the national media as a vehicle for attacking HTA, BancPass ultimately abandoned the majority of these arguments, and now asserts only that (1) HTA's letters to TxDOT, Apple, and Google were defamatory and (2) a declaration that "car rental customers' use of PToll is neither illegal nor tortious" and "tolling authority does not 'tortiously interfere' with HTA's agreements" by allowing rental customers to use PToll. [DKT 50, ¶¶ 26-39]. As in its Original Complaint, BancPass's live pleading offers more editorializing than actual legal arguments.

HTA filed its counterclaim, seeking, as relevant here, a declaration that BancPass is tortiously interfering with HTA's contractual right to be the exclusive provider of electronic toll collection services under both Avis's and Enterprise's rental agreements. [DKT 47, ¶¶ 33-43].

In this motion, HTA seeks partial summary judgment on the primary element of that claim—i.e., that a rental customer's use of PToll to pay tolls incurred on Avis's or Enterprise's rental vehicles constitutes a breach of those agency's respective rental agreements.

With the above facts in mind, HTA turns to the merits of its summary judgment claims.

### III.
### <u>DISCUSSION</u>

HTA moves for partial summary judgment on the primary disputed element of its tortious interference counterclaim—i.e., that a rental customer's use of the PToll app constitutes a breach of Avis's and Enterprise's respective rental agreements. Furthermore, HTA moves for summary judgment on BancPass's claims and HTA's affirmative defenses to BancPass's defamation claim. We will first briefly address the standard of review before turning to these issues.

### A.     **Standard of Review**

HTA moves for summary judgment on BancPass's defamation claim, declaratory judgment claim, and claim for emotional-distress and exemplary damages. Because BancPass will ultimately bear the burden of proof on these issues, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against BancPass if it fails to make a showing sufficient to establish the existence of an element essential to these claims. *See Marathon Financial Ins., Inc. v. Ford Motor Co.*, 591 F. 3d 458, 466-67 (5th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

HTA also moves for traditional summary judgment on an essential element of its claim for tortious interference, as well as its affirmative defense of judicial-proceeding privilege to BancPass's defamation claim. Because HTA will ultimately bear the burden of proof on these issues at trial, HTA must establish its entitlement to summary judgment as a matter of law. A court should grant traditional summary judgment when the "movant shows that there is no

7

genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The Court should view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in favor of the non-movant.

**B.      The Court Should Dismiss Plaintiff's Defamation Claim and Claim for Declaratory Judgment regarding Enterprise's and Avis's Rental Agreements.**

BancPass has asserted two claims against HTA. First, BancPass claims that the statements contained in HTA's letters to Apple, Google, and TxDOT were defamatory. Second, BancPass seeks a general declaration that rental-car customers and tolling authorities do not breach their contractual obligations or interfere with HTA's contracts by using PToll to pay tolls on rental vehicles. For the following reasons, these claims and the related damages either fail as a matter of law or are not supported by any evidence.

**1.      BancPass lacks standing to pursue a declaratory judgment regarding rental contracts and tolling contracts to which it is not a party.**

BancPass's declaratory judgment action regarding the rights of its customers and tolling authorities should be dismissed for lack of standing. BancPass asks this Court to declare that "rental customers' use of PToll is neither illegal nor tortious" and that "a tolling authority does not 'tortiously interfere' with HTA's agreements, or commit any other unlawful act, by permitting consumers to elect how they pay their tolling obligations while driving a rental vehicle." [DKT 50, ¶¶ 38-39]. However, it is undisputed that BancPass is not a party to its customers' rental agreements with Avis and Enterprise, to tolling authorities' contracts with HTA, or to HTA's contracts with Avis or Enterprise. Thus, HTA is seeking a declaration regarding contractual rights of parties under contracts to which BancPass is not a party. Therefore, under well settled law, BancPass lacks standing to seek these declaratory judgments.

8

Whether a party has standing to seek declaratory judgment is a question of law to be resolved by the Court. When, as here, a contractual dispute is raised under the Court's diversity jurisdiction, the Court should apply Texas's substantive law to determine what parties have standing to sue to enforce the contract. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 602 (5th Cir. 2000). Generally, under Texas law, "only parties to a contract may sue to enforce the rights provided in the four corners of the agreement." *Id.* The exception to this rule is that a person who is not a party to the contract "may nevertheless have standing to enforce the contact if it was made for that person's benefit"; i.e., the person is a third-party beneficiary. *Id.* (citing several Texas authorities).

In this case, BancPass appears to seek a declaration that its customers are not breaching their contracts with rental-car agencies by using PToll to pay tolls incurred on rental vehicles.[10] However, BancPass is not a party to those rental agreements, nor has it ever asserted that it is a third-party beneficiary. Similarly, BancPass seeks a declaration regarding whether tolling authorities interfere with HTA's contractual rights by allowing rental customers to use PToll. The resolution of such a question depends on an interpretation of (1) HTA's contracts with Avis and Enterprise and (2) HTA's contract with specific tolling authorities. Again, BancPass is not a party to either set of HTA's contracts, nor is it a third-party beneficiary.

Because BancPass lacks standing to seek declaratory relief regarding other party's rights and obligations under contracts to which BancPass is not a party, BancPass's claims for declaratory relief should be dismissed.

---

[10] BancPass actually seeks a declaration that its customers' use of PToll is not "illegal or otherwise tortious." [DKT 50, ¶ 38]. Setting aside the fact that such a proposed declaration is too broad to be given any definite meaning, neither BancPass's customers nor any law enforcement authority is a party to this lawsuit. Thus, to the extent BancPass is actually seeking a declaration about the lawfulness of its customers' conduct, such a declaration is wholly beyond the scope of this case; beyond the purview of the parties involved; and, potentially, beyond this Court's jurisdiction.

**2.    BancPass's defamation claims must fail as a matter of law because HTA's letters to Apple, Google, and TxDOT were privileged communications connected to HTA's proposed judicial proceeding against BancPass.**

Under Texas law, a statement made in connection with a proposed judicial proceeding is absolutely privileged from any claim of defamation. *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 27-29 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). This privilege stems from the general rule that any statement made in the course of a judicial proceeding is absolutely privileged, meaning that it cannot serve as the basis of an action for defamation, regardless of any allegation that the statement is false or made with malice. *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942). The purpose behind this privilege is to prevent the threat of defamation claims from chilling pursuit of judicial relief.

In the context of statements made before proposed litigation begins, the privilege attaches if the litigation is "contemplated in good faith and under serious consideration." *Daystar Residential*, 127 S.W.3d at 28. It is not necessary that the litigation was ultimately pursued, nor is it relevant that the litigation would have been successful. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 655 (Tex. 2015) ("The fact that a formal proceeding does not eventually occur will not cause communication to lose its absolutely privileged status."). Similarly, for the judicial-proceeding privilege to apply, it is not necessary that the alleged defamatory statements be made directly to the parties or even likely parties to the litigation. *See, e.g.*, *Russell v. Clark*, 620 S.W.2d 865, 868-70 (Tex. App.—Dallas 1981, ref. n.r.e.) (pre-litigation letter from attorney to investors seeking evidence relating to proposed litigation was privileged).

Whether a statement falls within the judicial-proceeding privilege is a question of law to be determined by the Court. *Senior Care Res., Inv. v. OAC Senior Living, LLC*, 442 S.W.3d 504, 513 (Tex. App.—Dallas 2014, no pet.). It is important to note that there is a strong presumption that the judicial-proceeding privilege protects all statements that "bear some relation to" the

10

proposed proceeding. *Russell*, 620 S.W.2d at 869. Any doubt about whether a privilege applies should be resolved in favor of applying the privilege.

In this case, HTA's letters to Apple, Google, and TxDOT were made in good faith anticipation of litigation with BancPass. As HTA explained in its letter to BancPass, HTA reached out to Apple and Google to prevent PToll from allowing its customers to register rental vehicles in violation of Avis's and Enterprise's rental agreements. Similarly, HTA's letter to TxDOT was made in anticipation of litigation with BancPass because, as discussed in HTA's counterclaim, BancPass's attempt to register license plates already belonging to HTA's TxDOT fleet account interferes with HTA's contract with TxDOT. [DKT 47, ¶¶ 40-41].

Indeed, these statements were not only made in anticipation of litigation, but directly relate to the counterclaim HTA ultimately pursued in this case. The very claims against BancPass which formed the basis of HTA's letters to TxDOT, Google, and Apple were the same claims that HTA ultimately brought in its counterclaim. [DKT 47, ¶¶ 40-41]. The mere fact that BancPass brought suit first does not destroy the privileged nature of HTA's statements to Apple, Google, and TxDOT anymore than had HTA ultimately decided not to pursue its litigation against BancPass. *Cf. Writt*, 464 S.W.3d at 655 (noting that absolute judicial-proceeding privilege is not destroyed merely because litigation not ultimately pursued).

Therefore, as is clear from the four-corners of HTA's letters to Google, Apple, and TxDOT, the statements contained in these letters were in anticipation of a proposed—and ultimately pursued—judicial proceeding. Thus, these statements are privileged and cannot support a defamation claim. Given that BancPass's defamation claim relies exclusively on the statements contained within these letters, the Court should grant summary judgment on HTA's affirmative defense of judicial-proceeding privilege and dismiss BancPass's defamation action.

**3.**     **The alleged defamatory statements in HTA's letters merely express a legal opinion regarding undisputed facts, and thus like all opinions cannot constitute a false statement of fact.**

BancPass's defamation claims regarding HTA's letters to Apple, Google, and TxDOT center on two general categories of statements: (1) use of PToll violates the Avis and Enterprise rental agreements[11] and (2) PToll requires rental customers to represent to tolling authorities that the customer owns the rental vehicle the customer is registering with PToll, and that this misrepresentation to a governmental agency regarding the vehicle's ownership constitutes a felony.[12]   Both of these categories of statements constitute legal opinions regarding the implication of undisputed facts of how PToll allows rental customers to register rental vehicles. Given that no court has yet to determine whether PToll in fact violates state law or breaches rental agency's rental agreements, HTA's legal opinion on these topics are, by definition, not verifiably false statements of fact.  *Burch v. Coca-Cola Co.*, 119 F.3d 305, 325 (5th Cir. 1997) ("Texas case law plainly protects those communications that are not objectively verifiable.").

Whether a statement is an actionable statement of fact is a question of law to be determined by the court.  *Bentley v Bunton*, 94 S.W.3d 561, 580 (Tex. 2002). Recently, another Texas federal court addressing a very similar fact pattern dismissed Plaintiff's defamation claim because the complained-of statements were legal interpretation of undisputed facts.  *Hellmutth, Obata & Kassabaum, L.P. v. Efficient Energy, LLC*, No. H-14-2945, 2016 U.S. Dist. LEXIS 19904, at *8 (S.D. Tex. Feb. 18, 2016).   In *Hellmuth*, the defendant asserted in letters to the media that because the plaintiff was a public official, his request for a rebate from a contractor "most likely constitute an illegal kickback."  *Id.* at *6.  The plaintiff sued, claiming that the vast

---

[11]   *See* BancPass's Second Amended Complaint listing allegedly defamatory statements relating to tortious interference.  [DKT 50, ¶¶ 27 (j), (k), (l)].
[12]   *See* BancPass's Second Amended Complaint listing allegedly defamatory statements relating to alleged violations of state law.  [DKT 50, ¶¶ 27 (a)-(f), (i), (m), (o)].

12

majority of legal scholars or governmental entities have stated that the disputed rebate does not constitute a kickback under the relevant Texas statute. *Id.*

The court nevertheless concluded that the defendant's statement was not actionable, noting that even though the majority of lawyers who had reviewed the issue agreed with plaintiff, no court had yet ruled on the issue. As the court explained "[t]he correctness of a party's opinion on an undecided legal issue . . . is not an appropriate basis for a defamation or business disparagement claim." *Id.* at *10. Thus, the court concluded, the defendant's statements were not objectively verifiable as false at the time they were made.[13]

Similarly in this case, the complained of statements in HTA's letters to Apple, Google, and TxDOT contain only HTA's legal opinions regarding the implications of using PToll on rental vehicles. The underlying facts of how PToll allows rental customers to register license plates that are owned by rental companies are not only explained in the letters, they are undisputed in this case. Furthermore, no court other than this Court has ever been asked to determine whether PToll or any similar smartphone application may properly be used to circumvent HTA's exclusive right to provide electronic tolling services to Avis and Enterprise.

Like the letters in *Hellmuth*, the underlying legal dispute within these letters has never been addressed by any court, and thus the legal opinions expressed in HTA's letters were not

---

[13] Likewise, another Texas court recently explained that legal opinions regarding undisputed facts are generally not actionable, especially when the underlying facts are laid out in the statement. *Vecchio v. Jones*, No 01-12-00442-CV, 2013 Tex. App. LEXIS 8324, at *19 (Tex. App.—Houston [1st Dist.] Jul. 9, 2013, no pet.). In *Vecchio*, the defendant sent letters to HOA members stating that because the HOA's president was not properly elected under the required procedures, the president's actions were null and void. *Id.* The court noted that these letters included statements of how the president was originally elected, and therefore the readers of these statements could determine for themselves whether they agreed with the legal opinion that the president was acting without authority. *Id.*

objectively verifiable at the time they were made.[14]  Thus, as a matter of law, HTA's letters do not contain a verifiably false statement of fact, and therefore the Court should dismiss BancPass's defamation claim.

### 4.   BancPass, as a corporation, is not capable of suffering mental anguish, nor should it be permitted to recover for the mental anguish of its employees.

Assuming that the Court does not dismiss BancPass's defamation claim on the two bases identified above, the Court should grant partial summary judgment to limit BancPass's damages to actual reputational harm.  In its defamation claim, BancPass does not claim that HTA's alleged defamatory statements actually caused economic or reputational injury to BancPass, but instead asserts that BancPass has suffered "significant stress, mental anguish, humiliation and embarrassment."  [DKT 50, ¶ 30].  BancPass has explained that this stress, mental anguish, humiliation, and embarrassment is connected to the stress its President, Glenn Deitiker, allegedly suffered during the time that PToll was temporarily unavailable on Google Play.[15]

Under Texas law, if the allegedly defamed business is a corporation, then the corporation is the party that has suffered reputational harm, not its owner or executives.  *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 151 (Tex. 2014) (explaining that corporations are the only businesses who can properly bring defamation claim).

Here, BancPass is a Texas corporation, and only BancPass has brought a claim for defamation.  Thus, it cannot now seek to recover defamation damages allegedly suffered by its president.  Mr. Deitiker is not a party to this case, and he cannot now claim that BancPass is

---

[14]  Similarly, like the letters in *Vecchio*, HTA's letters provide the underlying and undisputed facts that form the basis of HTA's complained of legal opinions, and thus Apple, Google, and TxDOT were able to determine for themselves whether they ultimately agreed with HTA's legal analysis.  *See supra* n. 13.

[15]  *See* Glenn Deitiker expert report discussing how after PToll was removed from Google, "I was under an extreme amount of stress and pressure due to HTA's actions, which prevented BancPass from fully concentrating on the meeting at hand and instead focusing on whether our app was even available for download, attached hereto **Exhibit K**, p. 7**.**

some alternative conduit through which he has suffered harm. If it were otherwise, a corporation could presumably recover for the mental anguish its employees or shareholders who were distressed by the business's disputes. Such an outcome is not only untenable, it directly contradicts Texas's recognition that a corporation is a separate legal entity from its owners for purposes of defamation. *See id.*

Furthermore, as a corporation, BancPass cannot suffer the type of injury which would support a claim for mental anguish. BancPass claims stress, humiliation, and embarrassment as separate forms of damages. But under Texas law, these are all forms of mental anguish damages. *See Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013) (describing these as forms of mental anguish). These categories of damages—i.e., mental pain and anguish—are clearly forms of psychological harm that can only be suffered by real persons, as only persons have actual psyches to be harmed. Thus, BancPass as a corporation cannot suffer the type of "high degree of mental pain or anguish" that would support mental-anguish damages.[16] *See id.*

Thus, the Court should grant HTA's motion for partial summary judgment; rule that as a matter of law BancPass cannot recover mental anguish damages; and dismiss BancPass's claim for damages for significant stress, mental anguish, humiliation and embarrassment.

5.      **BancPass is barred as a matter of law from recovering exemplary damages because it did not request that HTA retract its allegedly defamatory statements within 90 days of learning that the statements were made.**

As part of its defamation claim, BancPass seeks exemplary damages from HTA. This is BancPass's only claim for damages, and thus the only basis for awarding exemplary damages, as BancPass's only other live claim is for declaratory relief. However, under Texas law, a plaintiff

---

[16]  Admittedly, it does not appear that any Texas court has directly addressed whether a corporation can recover for mental anguish. However, both of the jurisdictions that have addressed the issue have concluded that mental anguish damages are not recoverable by a corporate entity. *See Bayou Fleet P'ship v. Clulee*, 150 So.3d 329, 334 (La. App. 5th Cir. 2014) (citing several Louisiana cases holding the same); *Wolf Street Supermarkets, Inc. v. McPartland*, 108 A.D.2d 25, 32 (N.Y App. Div. 1985).

15

seeking exemplary damages for a defamation claim must send a written demand for retraction to the alleged tortfeasor within ninety days of learning of the alleged defamatory statement.

Specifically, Section 73.055(c) of the Texas Civil Practice and Remedies Code provides that "[i]f not later than the 90th day after receiving knowledge of the publication, the person does not request a correction, clarification, or retraction, the person may not recover exemplary damages." The statute goes on to state that demand is sufficient to constitute a request for correction, clarification, or retraction if:

(1) it is served on the publisher;

(2) is made in writing, reasonably identifies the person making the request, and is signed by the individual claiming to have been defamed or by the person's authorized attorney or agent;

(3) states with particularity the statement alleged to be false and defamatory and, to the extent known, the time and place of publication;

(4) alleges the defamatory meaning of the statement; and

(5) specifies the circumstances causing the defamatory meaning of the statement if it arises from something other than the express language of the publication.

TEX. CIV. PRAC. & REM. CODE § 73.055(d).

In this case, HTA informed BancPass in its cease-and-desist letters that it had already sent letters to Apple and Google explaining HTA's position that use of the PToll app for rental vehicles constitutes a breach of those contracts rental agreements. *See* Exhibit H, p. 2. HTA sent this letter to BancPass on September 30, 2014, and BancPass received confirmation that HTA had followed through on its promise on October 6, 2014, when Google informed BancPass that it would be taking down the PToll app in response to HTA's demand.[17] Finally, in response to BancPass's open records request, TxDOT provided BancPass with a copy of HTA's letter to

---

[17] *See* email from Google to BancPass informing them of removal, **attached hereto as Exhibit L**, BPI000181**.**

TxDOT on October 10, 2014.[18]  Therefore, the latest date upon which BancPass learned of HTA's alleged defamatory statements was October 10.

However, as BancPass acknowledges in its briefing, the first instance of BancPass ever demanding that HTA retract its statements was on July 1, 2015 in a settlement offer.  [DKT 65, p. 5].  Even assuming, without conceding, that this retraction demand was sufficient to satisfy the requirements of Section 73.055(d), it was made a full 268 days after the latest date upon which BancPass learned of HTA's letters to Apple, Google, and TxDOT.  Accordingly, BancPass is barred by Section 73.055(c) from recovering exemplary damages in this case.  Thus, the Court should grant HTA's motion for partial summary judgment and dismiss BancPass's claim for exemplary damages.

C.  **Based on the four corners of the contracts, a customer's use of PToll for rental vehicles breaches the terms of Avis's and Enterprise's rental agreements.**

HTA is seeking declaratory judgment that BancPass is tortiously interfering with HTA's contractual right to be the exclusive provider of video-based electronic tolling services under the Avis and Enterprise rental agreements.[19]  An essential element of that claim, and the party's primary dispute in this case, is whether use of PToll actually breaches those rental agreements. *See John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721, 730 (Tex. App—Austin 2000, pet. denied) (noting that an element of tortious interference is "willful and intentional act of interference," which can be established by proving defendant induced or caused third party to breach its contractual obligations).  Therefore, HTA is seeking summary judgment

---

[18]  *See* TxDOT's response to BancPass's open records request, attached hereto as **Exhibit M**, BPI000215-BPI000216.

[19]  HTA is also seeking declaratory judgment that BancPass is tortiously interfering with HTA's contractual rights under its contract with TxDOT.  [DKT 47, ¶ 50].  However, that claim is not part of HTA's motion for summary judgment, and is not directly affected by the Court's resolution of this motion.

that under the unambiguous language of these contracts, a rental customer's use of PToll does in fact constitute a breach of Avis's and Enterprise's rental agreements.

"Under Texas law, interpreting an unambiguous contract is a question of law." *See State Farm Fire & Cas. Co. v. Lange*, 480 Fed. Appx. 309, 313 (5th Cir. 2012) (internal quotations omitted). Therefore, if the terms of a contract are unambiguous and the facts underlying the contract claim are undisputed, the Court can determine whether given conduct constitutes a breach of the contract as a matter of law. *Id.* (affirming summary judgment based on unambiguous contract). Because Avis's and Enterprise's rental agreements contain distinct contractual language, HTA will analyze the four corners of these contracts separately.

### 1. Avis's e-Toll Program

As discussed above, ABG has contracted with HTA for HTA to be the exclusive provider of electronic toll collection services for its entire rental fleet, which is reflected in Avis's rental agreements. Section 16 of these rental agreements contains the relevant provision for Avis's e-Toll service program, which provides in relevant part:

> If you do not pay cash for tolls or the roadway does not accept cash payment you automatically opt into our e-Toll service, pursuant to which you agree to pay us or our toll program administrator, with whom we will share your credit card/debit information, for *all tolls incurred* during your rental and all related fees, charges, and penalties. . . . You can avoid the convenience fee and other charges by paying the toll in cash, using your electronic device, or avoiding any cashless toll road or passage.

Exhibit C, p. 2.

As the above language plainly states, if a rental customer does not pay cash for tolls, the customer automatically agrees to pay HTA, as the toll program administrator, for all tolls incurred. Furthermore, the agreement provides that if the customer wants to avoid paying HTA for this service, it must pay cash for the toll, avoid toll roads, or use an electronic toll device.

It is clear from BancPass's own explanation of PToll that the application does not constitute paying cash for tolls. Similarly, PToll does not constitute an electronic toll device. Although a customer uses his smart phone to register a vehicle through PToll, PToll ultimately relies on the vehicle's license plate, and the toll roads capturing an image of that license plate via video-based tolling, to pay the toll. Actual electronic toll devices are electronic toll transponders—such as HTA's tags in rental vehicles, TxDOT's "TxTAG," and the "E-ZPass" used in the Midwest, Southern, and Eastern United States—that send radio signals which are read as the vehicle passes radio-equipped toll booths. Thus, unlike actual electronic devices, PToll relies solely on the vehicle's license plate to record and pay for a customer's tolls.

Given that PToll does not qualify as paying cash, using an electronic device, or avoiding toll roads, Avis's rental agreements do not permit use of PToll as an alternative to e-Toll program. Therefore, when a customer attempts to use PToll to pay electronic tolls on an Avis vehicle, that use constitutes a breach of the customer's agreement to pay HTA and Avis for all tolls incurred during the customer's rental vehicle.

**2.      Enterprise TollPass Program**

Similarly, Enterprise has incorporated language into its rental agreements to protect HTA's exclusive right to provide electronic toll collection services for Enterprise's fleet. Specifically, with respect to video-based tolling like that used by PToll, Enterprise's rental agreements provide as follows:

> (3)(b)(5): The optional Tollpass service accepted by Renter provides for . . . in some states, the use of video-monitored toll collection services (Tollpass Automatic Service, and together with the Transponder Service, collectively the Tollpass service). In addition to the daily charge for the Tollpass Service, Owner, its affiliate or a third party may separately charge Renter's credit or debit card . . . for each toll (or other charge) incurred using the Tollpass Service . . . .
> . . . .

(3)(c)(4): A Tollpass convenience charge (TCC) (where available) of up to $5.00 per day of Rental Period for day Vehicle is operated on a Tollpass Automatic Service [defined above as video-monitored toll collection service] covered road and Vehicle operator does not pay an applicable toll.

Exhibit D, p. 3.

This program and its obligations are further explained in the "YOUR TOLL ROAD TIMESAVER" handout provided by Enterprise, attached hereto as **Exhibit N**. This handout explains how a customer automatically opts into HTA's service by using electronic toll lanes, and also explains that a customer can avoid using HTA's services. Specifically, the handout states that "[t]o avoid our Tollpass service charges simply avoid toll roads or pay cash at the toll plaza, if that option is available." Exhibit N. Thus, Enterprise's rental agreements provide that if a customer uses a video-based toll lane covered by HTA—which encompasses every video-toll lane in the United States, including every toll lane in which BancPass operates—the customer automatically agrees to pay HTA for those electronic tolls, plus the convenience charge. To avoid that charge, the customer must either pay cash or avoid the video-based toll lane.

Given that using PToll does not qualify as paying a toll in cash or avoiding a video-based electronic toll lane, use of PToll to avoid paying HTA for the Tollpass Automatic Service is a breach of Enterprise's rental agreements. Thus, HTA's seeks partial summary judgment on this element of HTA's counterclaim for tortious interference.

## IV.
## CONCLUSION

The Court should dismiss Plaintiff's claims for defamation and declaratory relief. Furthermore, the Court should grant HTA's motion for partial summary judgment because, as a matter of law, the use of PToll application by an Avis or Enterprise rental customer violates the unambiguous language of those agencies' respective rental agreements.

*AUS 536529855v7*

Respectfully submitted,

**GREENBERG TRAURIG LLP**

*/s/ Gregory J. Casas*
Gregory J. Casas
Texas Bar No. 00787213
Federal Bar No. 16836
Email: casasg@gtlaw.com
Alan W. Hersh
Texas Bar No. 24080944
Email: hersha@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Tel: 512.320.7200
Fax: 512.320.7210

**ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF
HIGHWAY TOLL ADMINISTRATION, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that this Motion for Summary Judgment was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service in the above-referenced case, are being served this 16th day of June, 2016, with a copy of the above-document via the Court's CM/ECF System per Local Rule CV-5(a)(3).

*/s/ Gregory J. Casas*
Gregory J. Casas

AUS 536529855v7