# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| BANCPASS, INC. | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| vs. | § | |
| | § | |
| HIGHWAY TOLL ADMINISTRATION, LLC, | § | CIVIL ACTION NO. 1:14-CV-01062-SS |
| | § | |
| Defendant/Counter-Plaintiff | § | |

**DEFENDANT/COUNTER-PLAINTIFF HIGHWAY TOLL ADMINISTRATION, LLC'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. DISCUSSION ..................................................................................................................... 1

    A.    BancPass' Argument that It has Standing to Seek Declaratory Relief Regarding Other Parties' Contracts Even Though It Lacks Standing to Sue on Those Contracts is Without Merit and Inconsistent with Binding Precedent. .............................................. 1

    B.    HTA's Letters to Apple, Google, and TxDOT were Communications in Anticipation of This Litigation, and BancPass' Attempt to Mischaracterize the Letters as Request for "Quasi-Judicial Relief" from Apple, Google, and TxDOT are Unavailing and Inconsistent with Case Law. ....................................................................................... 3

    C.    The Statements of Fact in HTA's Letters to Apple, Google, and TxDOT are Substantially True, and Therefore HTA's Legal Opinion About the Application of Those Facts Cannot Support a Defamation Claim. ....................................................... 6

    D.    Because BancPass Concedes that It Cannot Recover Mental Anguish Damages, HTA is Entitled to Summary Judgment on this Point. ............................................................ 7

    E.    BancPass' Attempt to Avoid the Texas Defamation Mitigation Act by Arguing BancPass Did Not Know It had been Defamed is Unavailing and Inconsistent with Its Claim for Reputation Damages. ............................................................................... 8

    F.    BancPass Improperly Relies on Parol Evidence, and Therefore Fails to Respond to HTA's Argument Regarding the Plain Language of the Relevant Rental. .................... 9

III. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aetna Life Ins. Co. of Hartford v. Haworth*,
   300 U.S. 227 (1937) ................................................................................................................2

*Baubles & Beads v. Louis Vuitton*,
   766 S.W.2d 377 (Tex. App.—Texarkana 1989, no writ) .......................................................3

*Bryant v. Starr*,
   No H-11-4482, 2013 WL 1855891 (S.D. Tex. Apr. 30, 2013) ................................................3

*Cuba v. Pylant*,
   814 F.3d 701 (5th Cir. 2016) ...............................................................................................4, 5

*Daystar Residential, Inc. v. Collmer*,
   176 S.W.3d 24 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ..........................3, 4, 5, 6

*EnviroGlas Prod. Inc. v. EnviroGLAS Products, LLC*,
   705 F.Supp.2d 560 (N.D. Tex. 2010) ......................................................................................2

*Hellmuth, Obata & Kassabaum, L.P. v. Efficient Energy, LLC*,
   No. H-14-2945, 2016 WL 642352 (S.D. Tex. Feb. 18, 2016) .............................................6, 7

*Hellmuth v. Efficiancy Energy, L.L.C.*,
   No. H-14-2945, 2016 U.S. Dist. LEXIS 4650 (S.D. Tex. Jan. 14, 2016) .............................2, 7

*Kona Tech. Corp. v. S. Pac. Transp. Co.*,
   225 F.3d 595 (5th Cir. 2000) ...................................................................................................1

*Ploy-America, L.P. v. Stego Indus., LLC*,
   694 F.Supp. 2d 600 (N.D. Tex 2010) ......................................................................................2

*Shell Oil Co. v. Writt*,
   464 S.W.3d 650 (Tex. 2015) ...................................................................................................3

*Tex. Parks & Wildlife Dept. v. Sawyer Trust*,
   354 S.W.3d 384 (Tex. 2011) ...................................................................................................2

*Tran v. Hoang*,
   481 S.W.3d 313 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ....................................2

*Vecchio v. Jones*,
   No. 01-12-00442-CV, 2013 Tex. App. LEXIS 8324 (Tex. App.—Houston [1st
   Dist.] July 9, 2013, no pet.) .....................................................................................................7

*Waste Mgmt of Tex, Inc. v. Tex. Disposal Sys. Landfill, Inc.*,
 434 S.W.3d 142 (Tex. 2014)............................................................................9

**Statutes**

Tex. Civ. Prac. & Rem. Code § 41.004(a)..................................................................9

Tex. Civ. Prac. & Rem. Code § 73.055(c)..................................................................8

## I. INTRODUCTION

Defendant Highway Toll Administration, LLC ("HTA") files this reply in support of HTA's Motion for Traditional Summary Judgment on Plaintiff's Claims and Partial Summary Judgment on HTA's Counterclaim ("HTA's MSJ"). [DKT 84]. This reply will address the arguments raised in Plaintiff BancPass, Inc.'s ("BancPass") Opposition to HTA's MSJ (the "Response" or "BancPass' Response"). [DKT 92].

## II. DISCUSSION

A.  **BancPass' Argument that It has Standing to Seek Declaratory Relief Regarding Other Parties' Contracts Even Though It Lacks Standing to Sue on Those Contracts is Without Merit and Inconsistent with Binding Precedent.**

BancPass seeks a declaration that (1) a rental customers' use of PToll is neither illegal nor tortious and (2) a tolling authority does not tortuously interfere with HTA's contracts, or commit any other unlawful act, by allowing customers to use whatever method they choose to pay tolls incurred on rental vehicles. [DKT 50, ¶¶ 38-39]. In its Motion for Summary Judgment, HTA asserts that BancPass lacks standing to pursue either claim. [DKT 84, pp. 8-9]. Specifically, HTA notes that BancPass is not a party nor a third-party beneficiary to rental customers' contracts with rental agencies, HTA's contracts with tolling authorities, or HTA's contracts with rental agencies. Therefore, BancPass lacks standing to sue for relief under these contracts. *See Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 602 (5th Cir. 2000).

In its response, BancPass appears to acknowledge that it lacks standing to sue for damages or to "enforce" any of the above contracts, but nevertheless asserts that it has standing to seek a declaratory judgment about other parties' rights under these contracts. [DKT 92, pp. 2-4]. Specifically, BancPass argues that under the "broad statutory language" of the Federal and Texas declaratory judgment statutes, a party may seek a declaration about any contract it is

interested in or effected by.[1] [DKT 92, p. 2]. Therefore, according to BancPass, these declaratory judgment statutes grant "[b]road standing" to plaintiffs to seek declaratory relief about contracts to which they are not parties.

This exact argument has been raised and summarily rejected in both Federal and Texas courts. Specifically, the United States Supreme Court has stated that the federal declaratory judgment statute "is procedural only" and does not alter the constitutional analysis of Article III standing. *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937); *see also Hellmuth v. Efficiency Energy, L.L.C.* ("*Hellmuth II*"), No. H-14-2945, 2016 U.S. Dist. LEXIS 4650, at *9-10 (S.D. Tex. Jan. 14, 2016) (rejecting argument that plaintiff was "interested person" who could sue for declaration regarding third-party's contract because third-party did not dispute contract, so no case and controversy existed). Similarly, the Texas Supreme Court has stated that the Texas Uniform Declaratory Judgment Act is "a procedural device for deciding cases already within the court's jurisdiction," but it does not confer jurisdiction where none otherwise exists. *Tex. Parks & Wildlife Dept. v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011) (internal quotation omitted); *see also Tran v. Hoang*, 481 S.W.3d 313, 318 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (rejecting argument that UDJA allows "interested parties" to seek judgment when would not otherwise have derivative standing). Therefore, BancPass' assertion that these declaratory judgment statutes extend constitutional standing is without merit.[2]

---

[1] BancPass also cites several cases relating to whether a case and controversy exists between parties when one party sends a cease and desist letter. [DKT 92, pp. 1, 4] (citing *Ploy-America, L.P. v. Stego Indus., LLC*, 694 F.Supp. 2d 600 (N.D. Tex 2010); *EnviroGlas Prod. Inc. v. EnviroGLAS Products, LLC*, 705 F.Supp.2d 560, 567 (N.D. Tex. 2010). However, both of these cases relate to plaintiffs seeking declaratory relief that their actions do not violate the defendants' respective patents, and therefore both cases involve plaintiff's seeking declaratory judgment about its legal rights.

[2] BancPass appears to also argue that its request for declaratory relief should be re-construed as a declaration that either (1) BancPass does not tortuously interfere with HTA's contractual rights or (2) HTA's statements in its letters to Apple, Google, and the Texas Department of Transportation ("TxDOT") regarding rental customers and tolling authorities are false. [DKT 92, pp. 2-4]. However, this is not the

**B.  HTA's Letters to Apple, Google, and TxDOT were Communications in Anticipation of This Litigation, and BancPass' Attempt to Mischaracterize the Letters as Request for "Quasi-Judicial Relief" from Apple, Google, and TxDOT are Unavailing and Inconsistent with Case Law.**

In its Motion for Summary Judgment, HTA asserts that its letters to Apple, Google, and TxDOT were communications connected to this proposed judicial proceeding, and therefore cannot, as a matter of law, support a defamation claim. [DKT 84, pp. 10-11]. Specifically, HTA explains that these letters discuss HTA's attempt to prevent BancPass or PToll from interfering with HTA's contractual rights under customer's rental agreements and HTA's contract with TxDOT. Given that these are the exact claims for which HTA now seeks relief in this case [DKT 47, ¶¶ 33-43], HTA's complained of letters were communications in anticipation of this lawsuit against BancPass, and therefore are absolutely privileged from a defamation claim.

As HTA explains, under Texas law, statements made before proposed litigation begins are still subject to absolute privilege if the litigation is "contemplated in good faith and under serious consideration." *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 27-29 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *see also Shell Oil Co. v. Writt*, 464 S.W.3d 650, 655 (Tex. 2015). Furthermore, these pre-litigation statements do not need to be made directly to parties or even likely parties to the litigation as long as they "bear some relation" to the proposed litigation.[3] *Daystar Residential*, 176 S.W.3d at 28-29 (affirming application of privilege to statements made to media). Finally, as the Fifth Circuit has recognized, there is a strong

---

declaratory relief BancPass has pled. As noted above, BancPass only seeks declarations that rental car customers and tolling authorities do not tortuously interfere with HTA's rights or commit "any other unlawful act" by using PToll. [DKT 50, ¶¶ 38-39]. BancPass cannot now amend its live pleadings by recasting its declaratory judgment claim in a response to HTA's MSJ. *See Bryant v. Starr*, No H-11-4482, 2013 WL 1855891, at *2 (S.D. Tex. Apr. 30, 2013) (rejecting plaintiff's attempt to recast equitable relief in pleadings through summary judgment argument).

[3] Indeed, if the litigation privilege only protected statements that were made to parties to the litigation, then almost no statements would be covered by the privilege because a party cannot, by definition, defame a plaintiff by making false statements to the plaintiff. *See Baubles & Beads v. Louis Vuitton*, 766 S.W.2d 377, 380 (Tex. App.—Texarkana 1989, no writ) (noting that statement not "published" if it is only made to plaintiff).

3

presumption that statements that bear some relation to the proposed litigation are privileged, and "[a]ll doubt should be resolved in favor of the communication's relation to the proceeding." *Cuba v. Pylant*, 814 F.3d 701, 715 (5th Cir. 2016) (internal quotation omitted).

BancPass' Response does not directly challenge any of the above arguments, but instead misrepresents the relevant case law regarding judicial proceeding privilege. First, BancPass states that "[w]hile the privilege has been applied in some situations outside the scope of the direct pendency of judicial proceedings, those situations are typically limited to core litigation activities such as demand letters sent to potential defendants, documents filed with quasi-judicial bodies, or documents constituting notice required by law." [DKT 92, pp. 5-6]. In support of this proposition, BancPass cites *Daystar Residential*, in which the court listed various instances in which other courts have found pre-litigation statements to be absolutely privilege. 176 S.W.3d at 28. However, in *Daystar*, the Court ruled that a defense counsel's statements to the Houston Chronicle about his intent to file a lawsuit were privileged because counsel clearly was considering bringing suit and the statements bear some relation to that potential litigation. *Id.* at 26. Given that this statement to the media was clearly not a demand letter to potential defendants, a document filed with a quasi-judicial body, or document constituting notice, nothing in that opinion could reasonably be understood to mean that pre-litigation communications must fit into the three arbitrary categories identified in BancPass' Response.

Second, BancPass asserts in that *Cuba v. Pylant*, the Fifth Circuit "determined that absolute privilege dos not apply to unsolicited allegations of criminal or unlawful behavior to third parties, which is fatal to HTA's claims of absolute privilege." [DKT 92, p. 7]. This too is a direct misrepresentation of that court's opinion. *See* 814 F.3d at 715-16. The court in *Cuba* was addressing a novel distinction that relates to initial statements to law enforcement which

4

themselves are the impetus to criminal or governmental investigations. As the Court explains, "Texas law makes a distinction between straightforward reporting of alleged crimes and . . . statements made to investigators as a cooperating witness or made in pretrial proceedings." *Id.* The latter statements are absolutely privileged, but the former—*i.e.,* statements which initiate a criminal investigation—are only conditionally privileged, and that privilege is "waived if the communication was made to maliciously defame or procure a wrongful prosecution." [4] *Id.* However, nothing in *Cuba*'s analysis regarding statements to law enforcement that initiate criminal investigations suggest that the court was extending this conditional immunity doctrine to statements made in anticipation of private civil litigation. Given that this case does not involve statements to law enforcement authorities that instigated any criminal or regulatory investigations, nothing in *Cuba*'s analysis of that qualified privilege is relevant here.[5]

Finally, BancPass repeatedly mischaracterizes what judicial proceeding is at issue in this case. As HTA's MSJ repeatedly states, HTA's letters to Apple, Google, and TxDOT were in anticipation of this judicial proceeding against BancPass. Nevertheless, BancPass asserts that because HTA did not sue or intend to sue Apple, Google, or TxDOT directly, HTA's communications to those parties are not privileged. [DKT 92, pp. 6, 8-9]. However, this argument is contradicted by the very precedent BancPass cites, as the defendant in *Daystar Residential* did not have any intention of suing the Houston Chronicle when defense counsel

---

[4] Based on this distinction, the Court concluded that all of the defendants' statements to local law enforcement after the criminal investigation began were absolutely privileged, but the defendant's "initial reports" to law enforcement were only conditionally privileged and therefor plaintiff could seek discovery on those claims. *Id.* at 716.

[5] In a separate part of the *Cuba* opinion, the court concluded that defendants' statements to an SMU hearing board did not fall within the judicial proceeding privilege because SMU was not a quasi-judicial body, and thus the statements were not connected to any actual or quasi litigation. *Id.* at 716-17. However, nothing in this opinion can be read to overturn the established precedent that statements made in reasonable anticipation of actual judicial proceedings are absolutely privileged. Therefore, BancPass' argument that HTA's letters to Apple and Google are not privileged because those companies are "not law enforcement agencies or public agencies" is wholly without merit. [DKT 92, p. 7].

5

expressed his intent to sue a hospital. 176 S.W.3d at 27. Nevertheless, defendant's statement to the newspaper was still privileged as they were connected to that potential proceeding. As the above case-law makes clear, HTA's letters to Apple, Google, and TxDOT are absolutely privileged because (1) HTA was seriously contemplating litigation against BancPass on these issues and (2) the letters bear some relation to that proposed and ultimately pursued litigation.

C.  **The Statements of Fact in HTA's Letters to Apple, Google, and TxDOT are Substantially True, and Therefore HTA's Legal Opinion About the Application of Those Facts Cannot Support a Defamation Claim.**

As discussed more fully in HTA's Motion for Summary Judgment, as well as its Response to BancPass' Motion for Summary Judgment, HTA's factual assertions in its letters to Apple, Google, and TxDOT are substantially true. [DKT 84, pp. 12-14; DKT 91, pp. 18-19]. Specifically, the letters state that (1) HTA has contracted to provide toll payment services to rental companies; (2) PToll allows customers to circumvent HTA's program and register rental vehicles to BancPass' fleet; and (3) by registering rental vehicles with PToll, both rental customers and BancPass are falsely representing that the customer owns the rental vehicle.[6] These facts are undisputed, and BancPass' only complaint relates to HTA's stated opinion about the legal effect of these facts.

However, as discussed in HTA's MSJ, a legal opinion regarding an unsettled question of law cannot support a defamation claim. [DKT 84, pp. 12-14]. Specifically, when the complained of statement explains the underlying facts that form the basis of a legal opinion, and those facts are undisputed, then the legal opinion itself cannot constitute a defamatory statement. *Hellmuth, Obata & Kassabaum, L.P. v. Efficient Energy, LLC*, No. H-14-2945, 2016 WL

---

[6] With respect to this third fact, as discussed in HTA's Response to BancPass' Motion for Summary Judgment, BancPass' contract with TxDOT only permits it to register vehicles which BancPass' customers own. [DKT 91, pp. 16-18]. Therefore, when BancPass encourages rental customers to register rental vehicles with PToll, it is misrepresenting to TxDOT that the customers own those vehicles, when in fact the vehicles are owned by rental agencies.

6

642352, at *3-4 (S.D. Tex. Feb. 18, 2016); *see also Vecchio v. Jones*, No. 01-12-00442-CV, 2013 Tex. App. LEXIS 8324, at *19 (Tex. App.—Houston [1st Dist.] July 9, 2013, no pet.) (noting that if the underlying facts are set out in the statement, then the readers can decide for themselves whether they ultimately agree with the statements application of law to those facts).

In an attempt to distinguish the above cases, BancPass asserts that in *Hellmuth*, the the complained-of statement only averred that the underlying facts "would most likely constitute an illegal kickback." [DKT 92, p. 10]. BancPass argues that because this "criminal allegation was qualified by the term 'would most likely,'" *Hellmuth* is distinguishable from this case because HTA's letters did not contain any such qualifier. However, the Court's analysis in *Hellmuth* did not turn on this qualifying language, and instead focused on (1) the underlying factual statements in the letters, which were both true and undisputed, and (2) the letters expressed a legal opinion about an unsettled question of law.[7] 2016 WL 642352, at *2-3. Therefore, BancPass' attempt to distinguish the above cases is unavailing. For all the reasons stated in HTA's MSJ, HTA's application of undisputed facts to unsettled legal issues cannot support a defamation claim.[8]

D.  **Because BancPass Concedes that It Cannot Recover Mental Anguish Damages, HTA is Entitled to Summary Judgment on this Point.**

In its Motion for Summary Judgment, HTA notes that as a corporation, BancPass is not capable of suffering or recovering damages for mental anguish. [DKT 84, pp. 14-15]. In light of

---

[7] Similarly, the legal opinions expressed in *Vecchio* did not contain any qualifying language did not contain any qualifying language. 2013 Tex. App. LEXIS 8324, at *19. In *Vecchio*, a member of a home owner association sent a detailed letter stating unequivocally that the HOA's president was not lawfully elected under the HOA's bylaws, and thus his acts were null in void. *Id.* Nevertheless, the court concluded that these unconditioned legal opinions were not actionable because the letter explained the undisputed facts upon which it relied, and therefore the readers were not misled about any relevant facts and could determine for themselves whether they agreed with the legal opinion.

[8] In order to salvage its defamation claim, BancPass complains that "HTA also misrepresented that rental car customers were being charge by PToll from based [sic] on registration of the vehicle from the previous driver." [DKT 92, p. 11]. However, as discussed repeatedly in HTA's pleadings, prior to sending these letters, BancPass' then Vice President of Marketing, Rick Gegenheimer, told HTA that BancPass was experiencing these exact administrative issues. [DKT 62, pp. 7-8] (discussing how BancPass made HTA aware of these problems). [DKT 62, pp. 7-8].

7

these arguments, BancPass finally "stipulates" that it will not seek mental anguish damages. [DKT 92, p. 13]. Given that BancPass does not dispute this issue, and for all the reasons stated in HTA's MSJ, the court should grant HTA's motion for partial summary judgment on this issue and rule that as a matter of law, BancPass may not recover for mental anguish or for the mental anguish of its employees.

E.  **BancPass' Attempt to Avoid the Texas Defamation Mitigation Act by Arguing BancPass Did Not Know It had been Defamed is Unavailing and Inconsistent with Its Claim for Reputation Damages.**

In its Motion for Summary Judgment, HTA asserts that under Texas law, BancPass is barred from recovering exemplary damages for its defamation claim. [DKT 84, pp. 15-17]. Specifically, HTA notes that under Section 73.055(c) of the Texas Civil Practice and Remedies Code—referred to as the Texas Defamation Mitigation Act—"[i]f not later than the 90th day after receiving knowledge of the publications, the person does not request a correction, clarification or retraction, that person may not recover exemplary damages." In this case, HTA informed BancPass on September 30, 2014, that HTA had sent the disputed letters to Apple and Google. [DKT 84-8]. Furthermore, BancPass received a copy of the letter HTA sent to TxDOT on October 10, 2014. [DKT 84-13]. However, BancPass did not request that BancPass retract these statements until July 1, 2015—a full 268 days after receiving knowledge of HTA's complained of letters—and therefore under the plain language of section 73.005(c), BancPass is barred from recovering exemplary damages in this case.

In its response, BancPass does not dispute that it did not timely request a retraction of HTA's letter to TxDOT, and therefore appears to acknowledge that it cannot recover any exemplary damages in connection with that letter. However, BancPass argues that because it did not receive a copy of HTA's letters to Apple and Google until HTA produced those letters in this case, BancPass should not be treated as having knowledge that these letters were published until

8

that date. Specifically, BancPass claims that because it did not know that HTA's letters included assertions that use of PToll violates state law, BancPass "did not know it had been defamed at all" until HTA's production. BancPass even asserts "HTA has previously admitted that BancPass' claim for exemplary damages [for the Google and Apple letters] survives." [DKT 92, pp. 14-15]. However, this is a direct misstatement of HTA's pleadings. In the very motion BancPass cites, HTA states that it "does not concede that BancPass' request for retraction is timely with respect to the Google and Apple letters" because BancPass had knowledge that these letters were sent. [DKT 69-1, p. 2 n.1]. Therefore, BancPass assertion that HTA has waived this issue is a direct misstatement of the record. [DKT 92, p. 14].

BancPass' assertion that it did not know it was defamed is inconsistent with its claim for defamation damages. With respect to HTA's letters to Apple and Google, BancPass' only claim for damages is that its reputation was harmed when Google temporarily removed PToll from Google Play.[9] [DKT 50, ¶ 24]. BancPass has never asserted, nor is there any evidence to suggest, that (1) Apple took any action in response to HTA's letter, (2) Apple or Google published HTA's letters to any third parties, or (3) that Apple and Google changed their contractual relationship with BancPass in light of HTA's letters. Given that BancPass knew that Google took down PToll in response to HTA's letter months before filing this suit—and well in advance of HTA's production of these letters—its assertion that it did not know it had been defamed because it did not know of all of the statements in HTA's letters is without merit.

F.  **BancPass Improperly Relies on Parol Evidence, and Therefore Fails to Respond to HTA's Argument Regarding the Plain Language of the Relevant Rental.**

---

[9] BancPass also claims that HTA's letters to Apple and Google were defamatory per se. However, the Texas Supreme Court has explicitly stated that even in defamation per se cases, the plaintiff must prove actual harm to reputation to recover anything more than nominal damages. *Waste Mgmt of Tex, Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 157 (Tex. 2014). Given that nominal damages cannot support an award of exemplary damages, BancPass cannot recover exemplary damages in this case unless and until it proves actual damages. Tex. Civ. Prac. & Rem. Code § 41.004(a).

In its Motion for Summary Judgment, HTA explains that based on the four corners of Avis' and Enterprise's rental agreements, rental customers are required to use HTA for video-based tolling services. [DKT 84, pp. 17-20]. Therefore, HTA seeks partial summary judgment that a rental customer's use of PToll for tolls incurred on these rental vehicles violates the terms of these respective rental agreements. Because BancPass does not address HTA's arguments regarding the plain language of these contracts, HTA will not repeat that analysis here.

Instead, BancPass' Response asserts that use of PToll is not inconsistent with HTA's contracts with Avis and Enterprise. [DKT 92, pp. 17-18]. However, HTA's contracts with Avis and Enterprise are only relevant to interpreting Avis' and Enterprise's rental agreements if and when the Court first determines that the rental agreements are ambiguous.[10] Thus, as it did in its own motion for summary judgment, BancPass' argument improperly relies on parol evidence to respond to HTA's argument regarding the four corners of Avis' and Enterprise rental agreements. [DKT 91, pp. 6-13] (explaining that because summary judgment only proper when interpreting unambiguous contract, BancPass' repeated arguments about parol evidence are irrelevant). Therefore, for all the reasons stated in HTA's Motion for Summary Judgment and Response to BancPass' competing motion, the Court should hold that under the four corners of the contracts, a rental customer's use of PToll violates Avis' and Enterprise's rental agreements.

### III. <u>CONCLUSION</u>

For the forgoing reasons, HTA respectfully requests that the Court grant its Motion for Summary Judgment.

---

[10] Indeed, if HTA's contracts to Avis and Enterprise are necessary to interpreting these rental agreements, then issues such as HTA's obligation to maintain a $500,000 line of credit to guarantee payment of these tolls will be directly relevant to determining whether PToll in-fact interferes with these tolling programs. This is merely one of many examples to demonstrate that if parol evidence does become an, there is far more relevant parol evidence than the parties can or should address at the summary judgment stage.

Respectfully submitted,

**GREENBERG TRAURIG LLP**

*/s/ Gregory J. Casas*
Gregory J. Casas
Texas Bar No. 00787213
Federal Bar No. 16836
Email: casasg@gtlaw.com
Alan W. Hersh
Texas Bar No. 24080944
Email: hersha@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Tel: 512.320.7200
Fax: 512.320.7210

**ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF HIGHWAY TOLL ADMINISTRATION, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing was electronically filed with the Court and that counsel of record, who are deemed to have consented to electronic service in the above-referenced case, are being served this 7th day of July, 2016, with a copy of the above-document via the Court's CM/ECF System per Local Rule CV-5(a)(3).

*/s/ Gregory J. Casas*
Gregory J. Casas

*AUS 536536654v3*