## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **BANCPASS, INC.** | § | |
| | § | |
| **V.** | § | **A-14-CV-1062-SS** |
| | § | |
| **HIGHWAY TOLL** | § | |
| **ADMINISTRATION, LLC** | § | |

## ORDER

Before the Court are Plaintiff BancPass Inc.'s Motion for Leave to File Discovery Motion, and Subject to Same, Motion to Enforce Discovery Agreements and Motion to Compel, Dkt. No. 60, and Defendant Highway Toll Administration, LLC's Motion to Compel or, Alternatively, Exclude, Dkt. No. 81, and their attendant responses and replies. The District Court referred the above motions to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. The Court held a hearing on July 6, 2016 and now enters the following order.

## I. BACKGROUND

This dispute is between two companies that both provide mechanisms for motorists to pay highway tolls while driving in rental cars. Highway Toll Administration, LLC, ("HTA") has contracts with two major rental car companies, Avis and Enterprise, to be the exclusive provider of automated tolling services. BancPass, Inc. produces a smartphone application called PToll, which is designed to allow rental car customers to pay highway tolls without going through the rental car companies. In its Second Amended Complaint, BancPass alleges that HTA sent letters

to Apple, Google, the Texas Department of Transportation, and possibly others, that contained statements that HTA knew to be false about the legality of BancPass's PToll app, which caused both Apple and Google to remove the PToll app from their online stores.  Dkt. No. 50 at 9-10. BancPass believes that this was per se defamation and seeks damages.  *Id*.  It also seeks a declaratory judgment "that car rental customers' use of PToll is neither illegal nor tortious." *Id*. at 12.  BancPass's request likely stems from HTA's counterclaims, which include a request for a "declaratory judgment that the PToll application tortiously interferes with HTA's current and prospective contracts or contracts to which HTA is a third party beneficiary." Dkt.  No.  47 at 9.

## II. ANALYSIS

Each party has filed a motion to compel.  By its motion, BancPass wants to force HTA to produce all non-privileged documents responsive to certain previously agreed upon electronic search terms, and produce monthly revenue and customer service reports that HTA provided to the two rental car companies with which it contracts, Avis and Enterprise.  For its part, HTA wants BancPass to identify every person to whom BancPass claims HTA spread false rumors, as well as the basis for BancPass's belief that HTA made these statements, and produce financial documents regarding the sales and revenue figures from the PToll app, divided by month.

A.      **Documents responsive to the agreed search terms**

In order to simplify and expedite electronic discovery in this case, BancPass and HTA negotiated certain search terms that HTA would use in order to produce documents responsive to BancPass's requests for production 6, 11, 29, 38, 39, and 45.  The search terms at issue here are:

- Smartphone /50 toll!
- Smartphone /50 threat
- Smartphone /10 app!
- Phone! /10 app!

- Double /10 bill
- Geotoll

BancPass states that the "Smartphone" terms are intended to produce documents responsive to requests for production 6 and 29.  The terms are designed to identify internal discussions about the type of competitive threat that PToll represents to HTA.  They also are designed to help BancPass determine whether BancPass was beating HTA to market for a toll paying app, which it believes could provide evidence of HTA's motive or intent in writing its letters to Google and Apple.  BancPass argues that such searches could produce evidence of malice on the part of HTA, which it argues it needs to prove in order to recover punitive damages.  The "Double /10 bill" term is designed to produce documents responsive to request for production 45, 38, and 39.  BancPass is interested in learning whether rental car customers encountered problems with the toll process because of PToll, as HTA's letters alleged.  They are also designed to discover whether BancPass had a protectable reputation that could have been damaged by such problems.  The "Geotoll" term is designed to produce documents responsive to requests for production 10 and 11.  BancPass wants to know whether HTA was concerned about other apps, and therefore wrote its letter out of an altruistic concern for consumer protection, or was only concerned with BancPass's app, and therefore wrote the letters in order to damage BancPass.  Again, BancPass argues that this will provide evidence of HTA's motives in sending its letters.

The essence of BancPass's argument is that it and HTA's email negotiations over these specific search terms—which are memorialized in a series of emails—constituted a binding and enforceable agreement between the parties.  BancPass states that it believes the parties agreed that "all non-privileged documents responsive to the additional search terms will be produced," which it understood to mean that every non-privileged document the search turned up would be

produced, regardless of whether it had anything to do with the parties' dispute.  Dkt. No. 60-7 at

2.  Accordingly, BancPass states that it ran the search terms and produced all non-privileged

documents responsive to the searches it agreed to run.  HTA, on the other hand, produced only

those documents that it determined were relevant to the case and withheld the rest.  BancPass

argues that this is a violation of the agreement.  It notes that if HTA were concerned about

confidentiality it was permitted to mark any documents appropriately.   BancPass further notes

that the agreement included language about revising a search string to limit the number of hits.

HTA could have sought a refinement of the terms in order to make the searches and production

more manageable, but never did.  Finally, BancPass argues that an agreement by the parties to

run search terms and produce all non-privileged results prevents a producing party from later

attempting to withhold documents based on relevance. *Total Safety U.S., Inc. v. Rowland*, No:13-

6109, 2014 WL 1691551 (E.D. La April 29, 2014).

In response, HTA states that it ran the searches as requested, but that the search terms

turned up over 20,000 non-privileged but also non-responsive documents.  Dkt. No. 62 at 4.  It

then de-duplicated the search results against previous production, performed various searches to

exclude irrelevant documents, such as spam or newsletters, and then independently reviewed the

remaining 3,489 documents for responsiveness and privilege, ultimately producing 34

documents captured by the agreed search terms that were both responsive to BancPass's

discovery requests and were non-privileged.  Dkt. No. 62-4 at 2-4.  HTA states that it believed

that its email exchanges with BancPass did not amount to a binding agreement.  Rather it

understood the parties' agreement to produce "all non-privileged documents responsive to the

additional searches" to mean the parties would use the search terms "to capture a universe of

potentially responsive documents, and then, subject to stated relevancy objection, the parties

would produce non-privileged documents that were responsive to actual discovery requests."
Dkt. No. 62-1 at 4.   HTA argues that this interpretation is "consistent with our previous
negotiations and the general industry practice of using e-discovery each terms." *Id*.   It notes that
courts have held that "costs can be saved by allowing [the producing party] to produce the e-mail
generated by the agreed upon search terms without screening out irrelevant e-mail," as BancPass
did, or, if a producing party "wishes to review the data [captured by the agreed search terms] to
produce only responsive and un-privileged emails, Defendant will bear the cost of the search and
the needed software," which is what HTA claims to have done.   *Stambler v. Amazon*, No.  2:09-
CV-310, 2011 WL 10538668 at \*10 (E.D. Tex. May 23, 2011); *Hudson v. AIH Receivable
Mgmt. Servs.*, No.  10-2287-JAR-KGG, 2011 WL 1402224, at \*2 (D. Kan. April 13, 2011).
Finally, it argues that *Total Safety* is not applicable to this case because it never conceded on the
record that the parties' agreed protocol "limited the [exclusion of] production of documents to
only those which are based on privilege." *Total Safety*, 2014 WL 1691551 at \*8.

If the Court were to construe the parties' email correspondence on this topic to constitute
a contract, it is likely that HTA's actions would amount to a breach.   The Court's reading of the
e-mail chain is that the parties agreed to produce all of the results of the searches save privileged
documents.   But the parties' e-mail exchange is not a contract.   Rather, it was a means to
simplify and limit the scope of production responsive to BancPass's requests for production 6,
11, 29, 38, 39, and 45.   Having reviewed the attached affidavits detailing HTA's search and
review process there is no reason to believe that HTA has withheld documents it was obligated
to produce. Nor is it clear that additional searches with the identified search terms would
produce more documents responsive to BancPass's requests for production.   Accordingly, as to
the search terms, BancPass's motion is denied.

**B.      HTA's monthly revenue and customer service reports.**

BancPass next moves the court to compel HTA to produce monthly revenue and customer service reports that HTA provided to the two rental car companies with which it contracts, Avis and Enterprise.  It argues that these earnings reports will show the size of the market for rental car toll collection and therefore help to prove the loss BancPass may have incurred as a result of HTA's letters to Google and Apple.  It also argues that such reports are evidence of HTA's net worth, which it argues is discoverable due to BancPass's claim for punitive damages.  Requesting that a potential competitor—albeit one that operates in the marketplace in a wholly different way—turn over its revenue and customer service reports is an unusual way to determine the size of the market for a given service.  It is an even more unusual way to determine a company's net worth.  HTA's revenue and customer service reports are not relevant to any claim, affirmative defense, or damages in this case.  As such, BancPass's motion is denied.

**C.      HTA's Motion**

HTA has also brought a motion to compel or, alternatively, to exclude certain documents. Dkt. No. 81.  HTA first moves the Court to compel BancPass to identify every person BancPass claims HTA spread false rumors to, as well as the basis for BancPass's belief that HTA made these statements.  In the Second Amended Complaint BancPass alleges that HTA wrote letters to "Apple, Google, and TxDOT, and possibly others" that "contained false statements of fact that were published to third parties." Dkt. No. 50 at 8.  HTA therefore asked in its interrogatories that BancPass identify every person to whom BancPass claims HTA spread false rumors, as well as the basis for BancPass's belief that HTA made these statements.  In its response, BancPass stated that HTA had made false statements to, among others, "IBTTA members (at multiple

conferences and among multiple industry attendants)" and that "HTA's CEO David Centner is the source of these false statements and rumors." Dkt. No. 81-2 at 5.  The IBTTA is a trade organization with many members.  Without knowing what false statements or rumors BancPass alleges HTA made, to whom those rumors were spread, when they were made, and the basis for BancPass's assertions, HTA cannot determine the subject matter or scope of BancPass's defamation claim.  It therefore brought its motion.  However, at the hearing held July 6, 2016, BancPass agreed that it would revise its interrogatory responses to clarify which entities it alleges received defamatory statements and remove any alleged statements which it no longer seeks to pursue at trial.  Accordingly, BancPass is **ORDERED** to revise its responses to HTA's Second Set of Interrogatories Numbers 1 and 2 accordingly.

Next, HTA moves to compel BancPass to produce financial documents regarding the sales and revenue from the PToll app, divided by month.  It argues that such documents are directly relevant to BancPass's claimed defamation damages.  Such documents are clearly relevant to the issue of lost profit damages.  At the July 6, 2016 hearing, though, it became clear that BancPass had not yet formulated a damage model for this case.  BancPass is therefore **ORDERED** to either produce documents responsive to HTA's Second Set of Requests for Production Nos. 15 through 17 or certify that it is not seeking any lost profits damages.

### III.  CONCLUSION

Based on the forgoing, Plaintiff BancPass Inc.'s Motion for Leave to File Discovery Motion, and Subject to Same, Motion to Enforce Discovery Agreements and Motion to Compel, Dkt. No. 60, is **HEREBY DENIED**.  Defendant Highway Toll Administration, LLC's Motion to Compel or, Alternatively, Exclude, Dkt. No. 81, is **HEREBY GRANTED**.  BancPass is **ORDERED** to revise its responses to HTA's Second Set of Interrogatories Numbers 1 and 2,

and either produce documents responsive to HTA's Second Set of Requests for Production Nos.

15 through 17 or certify that it is not seeking any lost profits damages by **August 2, 2016**.

SIGNED this 26 day of July, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE